2005 UT App 541

Nevin PRATT and Denise Pratt, Plaintiffs and Appellants,

v.

Mary Ann NELSON; Douglas F. White; John Dustin Morris; William A. Mark; McKay, Burton & Thurman, P.C.; and Does 1–200, Defendants and Appellees.

No. 20040752–CA.

Court of Appeals of Utah.

Dec. 15, 2005.

F. Mark Hansen, Mark Hansen PC, and Carl E. Kingston, Salt Lake City, for Appellants.

John Dustin Morris, McKay Burton & Thurman, Salt Lake City, Douglas F. White, Bountiful, and William A. Mark, William A Mark PC, North Salt Lake, for Appellees.

Before BILLINGS, P.J., BENCH, Associate P.J., and ORME, J.

## OPINION

ORME, Judge:

¶ 1 Nevin and Denise Pratt were named as defendants in a lawsuit against alleged members of a polygamous cult. Counsel for plaintiff in that case held a press conference about the lawsuit, out of which this defamation action arose. In this appeal, the Pratts seek to overturn a ruling on summary judgment dismissing their lawsuit with prejudice. Specifically, the Pratts appeal the trial court's application of the judicial proceeding

privilege and group defamation doctrine to bar their claims. We affirm.

## BACKGROUND

¶2 On February 11, 2004, the Pratts brought claims of defamation, invasion of privacy, and civil conspiracy against Defendants Mary Ann Nelson; Douglas F. White; John Dustin Morris; William A. Mark; and McKay, Burton & Thurman, P.C. (collectively "the Defendants") following a press conference the Defendants held and participated in on August 28, 2003. The press conference was characterized by the Defendants as a preemptive effort to address the likely media attention that Mary Ann Nelson's lawsuit against David and Daniel Kingston would garner. Nelson, with the assistance of her attorneys—the other defendants named by the Pratts—had filed a complaint against David Kingston, Daniel Kingston, and many others (the Kingston Complaint), seeking damages for various alleged batteries and other torts. At the press conference, Nelson and at least two of her attorneys made statements to the press concerning the Kingston Complaint and its allegations. The Defendants distributed copies of the Kingston Complaint to members of the press who were present and, upon the request of a reporter, provided copies of the statement that Nelson read at the press conference (Nelson's Press Statement).[1]

¶3 Of particular relevance to this case are the Kingston Complaint's claims of infliction of emotional distress, civil conspiracy, and negligence against over 200 individual defendants, including the Pratts. As to these defendants, the Kingston Complaint specifically alleged that as members of a secretive

religious society and economic organization known as "the Order," the defendants assisted, encouraged, or knew of—and failed to prevent or report—the alleged torts committed by David and Daniel Kingston against Nelson.

¶4 The Defendants responded to the Pratts' lawsuit by moving to dismiss it for failure to state a claim. The Pratts filed a memorandum in opposition to the motion to dismiss, and the Defendants then responded with a reply memorandum in support of their motion to dismiss. In the reply memorandum, the Defendants argued for the first time that "judicial immunity, an absolute privilege to a claim of defamation," protected the Kingston Complaint, thereby barring any of the Pratts' defamation claims founded on the Kingston Complaint. In addition, the Defendants also included an affidavit with their reply memorandum that, among other things, averred that the Defendants had only generally referred to the defendants named in the Kingston Complaint as the " 'society,' 'organization,' and 'the Order' " at the press conference, never mentioning the Pratts by name. The trial court did not exclude the affidavit and thereafter properly treated the Defendants' motion, under rule 12 of the Utah Rules of Civil Procedure, as a motion for summary judgment. *See* Utah R. Civ. P. 12(b).

¶5 Because the motion to dismiss had been converted into a motion for summary judgment, the trial court entered an order allowing the parties ten days to submit "all supporting material ... pertinent to the motion for summary judgment." The Pratts presented no additional supporting material and neither did the Defendants.[2] In a sepa-

---

1. Nelson's written statement reads:

    My name is Mary Ann and I was raised in the Kingston Polygamist Family. I escaped when I was 16 years old. I am pursuing this lawsuit with the hope that other young girls and boys in the same position that I am in will see that the leaders of the Kingston organization are not above the law even though they tell us that they are, that they can be punished for what they do to us, and that we can escape and seek recovery for the harm that was done to us. I also hope that the people that we are bringing this lawsuit against will realize the harm they

have caused and continue to cause, and that they will change their ways.

2. Relying on appellate rule 11, the Pratts filed a motion with this court to supplement the record and *now* seek to add to the record a transcript of a video recording of the press conference held August 28, 2003. *See* Utah R.App. P. 11(h) (allowing for the "[c]orrection or modification of the record" transmitted to this court for the purposes of an appeal "[i]f anything material to either party is omitted from the record by error or accident or is misstated"). The Pratts contend that they are seeking to supplement the

rate order, the trial court acknowledged that the Defendants had raised the issue of judicial privilege for the first time in their reply memorandum and, in the interest of fairness, allowed the Pratts an additional eight days to file a responsive memorandum, limited to the issue of judicial privilege. The Pratts did not file their responsive memorandum concerning the issue of judicial privilege until over a month after the trial court's deadline for filing the memorandum had passed. The Pratts offered no explanation for their tardiness in filing, nor did they seek an extension of the deadline. The Defendants moved to strike the Pratts' late responsive memorandum, and in return, the Pratts moved to strike the Defendants' judicial privilege argument as improperly raised for the first time in a reply memorandum.

¶ 6 The trial court granted the Defendants' motion to strike the Pratts' memorandum, ruling that the Pratts' late memorandum was unauthorized under rule 7 of the Utah Rules of Civil Procedure and would, therefore, not be considered. The trial court also denied the Pratts' motion to strike the Defendants' judicial privilege argument, reasoning that the Pratts had been given the opportunity to address the argument but had chosen not to respond within the allotted time and were "solely to blame" for their own late filing and could not now "complain of unfairness." The trial court then proceeded, without a hearing, to rule on the Defendants' motion for summary judgment.

¶ 7 In its ruling, the trial court concluded that the Kingston Complaint was covered by the judicial proceeding privilege, which "acts as an absolute bar to the Pratts' claim of defamation arising from allegations made in [the Kingston Complaint]."[3] It also concluded that Nelson's Press Statement was not defamatory towards the Pratts, as a matter of law, because the statement never directly mentioned the Pratts, but only referred to a larger group of persons, i.e., "the leaders of the Kingston organization," "the people that we are bringing this lawsuit against," "the Kingston Polygamist Family," etc. The trial court based this conclusion on the Defendants' unrefuted affidavit, which set forth what the Defendants said at the press conference.[4]

## ISSUES AND STANDARDS OF REVIEW

¶ 8 The Pratts ask us to determine whether the trial court erred in granting summary judgment against them, thereby dismissing their claims.[5] Summary judg-

---

record in order to correct one "deliberate and wilful falsehood" and one misstatement the Defendants have made in their appellate brief about what was said at the press conference. We deferred ruling on the motion pending plenary consideration of the matter and now deny the Pratts' motion as beyond the scope of rule 11. *See Olson v. Park–Craig–Olson, Inc.*, 815 P.2d 1356, 1359 (Utah Ct.App.1991) (explaining that the record on appeal may only be supplemented "because of an omission or exclusion, or a dispute as to the accuracy of reporting, and not to introduce new material into the record") (citation omitted).

3. The trial court based its ruling on the general rule stated in *Krouse v. Bower*, 2001 UT 28, 20 P.3d 895, "that judges, jurors, witnesses, litigants, and counsel involved in a judicial proceeding have an absolute privilege against suits alleging defamation." *Id.* at ¶ 8. The trial court reasoned that the complaint was covered by the judicial proceeding privilege because the privilege covers "all pleadings and affidavits necessary to set the judicial machinery in motion." *DeBry v. Godbe*, 1999 UT 111, ¶ 12, 992 P.2d 979 (internal quotations and citation omitted).

4. Because the Pratts did not file any opposing evidence after the Defendants' motion to dismiss was properly converted to a motion for summary judgment, the trial court rightly concluded there was no genuine issue of disputed fact as to what was said at the press conference. *See Amica Mut. Ins. Co. v. Schettler*, 768 P.2d 950, 957 (Utah Ct.App.1989)("[W]hen the moving party has presented evidence sufficient to support a judgment in its favor, and the opposing party fails to submit contrary evidence, a trial court is justified in concluding that no genuine issue of fact is present or would be at trial."), *cert. denied*, 109 Utah Adv. Rep. 39 (1993).

5. The Defendants argue that the Pratts have not briefed or challenged certain aspects of the trial court's ruling, contending that the Pratts have waived those issues. Our review of the trial court's ruling and the Pratts' arguments on appeal reveals, however, that the only aspect of the trial court's ruling the Pratts have not meaningfully challenged on appeal is the trial court's reasons for dismissing the Pratts' civil conspiracy claim. "It is axiomatic that we will presume the correctness of lower court rulings that neither party challenges on appeal." *Dansie v. Hi–Country Estates Homeowners Ass'n*, 2004 UT App 149,-

ment is proper when "there is no genuine issue as to any material fact and [when] the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "In reviewing the district court's grant of summary judgment, we view the facts and inferences therefrom in the light most favorable to the nonmoving party." *Badger v. Brooklyn Canal Co.*, 966 P.2d 844, 847 (Utah 1998). "Because summary judgment is granted as a matter of law, we give the trial court's legal conclusions no particular deference." *Hodgson v. Bunzl Utah, Inc.*, 844 P.2d 331, 333 (Utah 1992).

■ ¶ 9 The Pratts also ask us to determine whether the trial court erred in striking their untimely memorandum on the issue of judicial privilege while refusing to strike the Defendants' judicial privilege argument raised for the first time in the Defendants' reply memorandum. "Motions to strike pleadings or parts thereof are addressed to the judgment and discretion of the trial court. A ruling thereon, except under circumstances which amount to a clear abuse of discretion, will not be disturbed on appeal." *Adams v. Portage Irrigation, Reservoir & Power Co.*, 95 Utah 1, 72 P.2d 648, 651 (1937).

## ANALYSIS

### I. Judicial Privilege

¶ 10 We first consider the Pratts' argument that the trial court erred in striking their late-filed memorandum, as our decision on that issue influences other aspects of the Pratts' appeal. The trial court ruled that the Pratts' memorandum was "an unauthorized memorandum" that the court would not consider and granted the Defendants' motion to strike the memorandum. The Pratts contend, however, that their memorandum was not "unauthorized," but "merely untimely," and that the trial court abused its discretion in deciding not to consider it. Moreover, the Pratts argue that the trial court's treatment of their untimely memorandum and its treatment of the Defendants' late-raised judicial

¶ 10, 92 P.3d 162. Thus, we do not specifically address the dismissal of the Pratts' civil conspira-

privilege argument was inconsistent, prejudicial to them, and an abuse of the trial court's discretion.

■ ¶ 11 The Pratts contend that, unlike the harm they suffered when the Defendants raised the judicial privilege argument for the first time in a reply memorandum, the Defendants would not have been prejudiced, nor the trial court inconvenienced, if the court had considered the memorandum in spite of its tardiness. While the trial court could have, as a matter of judicial power, opted to consider the late-filed memorandum, we cannot say that the trial court abused its discretion in deciding to strike the Pratts' late memorandum. Nor can we say that it abused its discretion in permitting the judicial privilege argument to remain in issue, even though it was raised for the first time in a reply memorandum, or in permitting the Pratts to respond, should they desire, within only eight days.

■ ¶ 12 Generally, appellate courts grant "[a] trial judge ... broad discretion in determining how a [case] shall proceed in his or her courtroom." *University of Utah v. Industrial Comm'n*, 736 P.2d 630, 633 (Utah 1987). While rule 7 of the Utah Rules of Civil Procedure states that a party's "reply memorandum ... shall be limited to rebuttal of matters raised in the [other party's] memorandum in opposition" to a motion, Utah R. Civ. P. 7(c)(1), the rule also allows the trial court discretion to consider other memoranda. *See id.* ("No other memoranda will be considered *without leave of the court.*") (emphasis added). Thus, when an issue is raised for the first time in a reply memorandum, a trial court may properly opt to "grant a motion to strike issues raised for the first time in a reply memorandum." *U.P.C., Inc. v. R.O.A. Gen., Inc.*, 1999 UT App 303,¶ 63, 990 P.2d 945. But

> as a matter of judicial economy, where there is no prejudice (i.e., where the opposing party is able to respond) and where the issues could be raised simply by filing a separate motion to dismiss, the trial court

cy claim.

has discretion to consider arguments raised for the first time in a reply memorandum.[6]

*Trillium USA, Inc. v. Board of County Comm'rs,* 2001 UT 101,¶ 17 n. 3, 37 P.3d 1093. *Cf. Hartford Leasing Corp. v. State,* 888 P.2d 694, 702 n. 9 (Utah Ct.App.1994) ("Nothing prevents the trial court from receiving additional memoranda if it wishes to do so.").

¶ 13 Given the facts of this case, we see no abuse of discretion. After deciding to consider the Defendants' judicial privilege argument, the trial court appropriately allowed the Pratts time to respond to the issue with their own memorandum. Thus, the Pratts were not blind-sided or otherwise prejudiced by the trial court's decision to consider the Defendants' judicial privilege argument.

¶ 14 We also conclude that the trial court's decision to strike the Pratts' memorandum as unauthorized after it was filed one month too late also falls within the trial court's broad discretion to manage the case before it. *See Adams v. Portage Irrigation, Reservoir & Power Co.,* 95 Utah 1, 72 P.2d 648, 651 (1937). *Cf. Barnard v. Wassermann,* 855 P.2d 243, 249 (Utah 1993) (noting that trial courts have the power to impose sanctions to control the proceedings before them); *Johnson v. Peck,* 90 Utah 544, 63 P.2d 251, 253–54 (1936) (holding that trial court did not abuse its discretion in refusing amendments to pleadings because they came too late). While the Pratts claim they are prejudiced by the trial court's decision to strike their memorandum, it is clear that any harm the Pratts suffered is self-inflicted. The Pratts filed the memorandum one month later than the trial court's deadline, without any effort to explain their lateness or to seek an extension of the deadline. The trial court's decision to strike the memorandum falls well short of being arbitrary. The Pratts, at their own peril, failed to timely file their responsive memorandum on the issue of judicial privilege.

¶ 15 With the Pratts' memorandum stricken from the trial court's consideration, the Defendants' assertions that a judicial privilege applied in this case were unopposed and uncontested. Being persuaded by the Defendants' judicial privilege arguments, the trial court ruled on summary judgment "that the doctrine of judicial privilege acts as an absolute bar to the Pratts' claim of defamation arising from allegations made in [the Kingston Complaint]." Given what was before the court, this ruling appears to be entirely correct. The Pratts now challenge the correctness of the trial court's summary judgment determination that a judicial privilege applies to the Kingston Complaint. The Defendants argue, however, that because of the Pratts' failure to timely file their memorandum presenting their legal arguments to the trial court, they cannot now ask this court to consider their judicial privilege arguments for the first time on appeal.

¶ 16 The Defendants' argument is well taken. In a situation like the instant one, the invited error doctrine comes into play to prevent us, for sound policy reasons, from reaching the merits of the trial court's ruling on the issue of judicial privilege. Utah's appellate courts apply the invited error doctrine, in part, "to give the trial court the first opportunity to address the claim of error" from which a party may later seek appellate relief. *State v. Geukgeuzian,* 2004 UT 16,¶ 12, 86 P.3d 742. This is so because, as has been noted, "fairness dictates that the trial judge should not be reversed on an issue he [or she] never considered, for if the issues had been presented, it is possible that no error would have been committed." Justice Michael J. Wilkins et al., *A "Primer" in Utah State Appellate Practice,* 2000 Utah L.Rev. 111, 126 (2000) (alteration in original) (internal quotations and citation omitted).

¶ 17 While the instant case does not bear the more tell-tale signs of a decision by a party to "intentionally mislead[ ] the trial court so as to preserve a hidden ground for reversal on appeal," *State v. Dunn,* 850 P.2d

---

6. The trial court in this case may well have been motivated by considerations of judicial efficiency and economy. Had the trial court refused to consider the judicial privilege issue raised for the first time in the Defendants' reply memorandum, the issue was one that Defendants could simply have raised by filing another motion to dismiss or for summary judgment.

1201, 1220 (Utah 1993), it does implicate the sound rationale behind many cases decided under the invited error doctrine. Our appellate courts "have held repeatedly that on appeal, a party cannot take advantage of an error committed at trial when that party led the trial court into committing the error." *Id.* Indeed, the alleged error from which the Pratts now seek appellate relief was caused, in no small part, by the Pratts' own disregard for the trial court's deadline for responding to the newly-raised issue of judicial privilege. The Pratts were put on notice that the trial court intended to consider the merits of the Defendants' judicial privilege argument, and they were given a specific opportunity to argue their side of the issue to the trial court and explain why judicial privilege should not apply.

¶ 18 The Pratts, however, did not see fit to file their memorandum in a timely manner, nor did they explain their lateness and seek more time to file the memorandum. Had the Pratts responded in a timely manner, the error they now allege in the trial court's ruling would have been brought to the trial court's attention and possibly avoided. We conclude that the Pratts cannot simply disregard the trial court's deadline, have their late memorandum stricken as a result, and expect to be able to nevertheless have the trial court reversed on appeal if it decided the issue incorrectly without the aid of their memorandum.

## II. Group Defamation

¶ 19 While the trial court applied the judicial proceeding privilege to the Kingston Complaint, the trial court did not definitively rule that Nelson's Press Statement was also covered by the privilege.[7] Instead, the trial

court ruled, as a matter of law, that the Pratts could not, without relying on the Kingston Complaint, show that any of the alleged defamatory statements refer to them because the Pratts were never mentioned in Nelson's Press Statement nor did the circumstances imply any reference to the Pratts.[8] It therefore concluded that the alleged defamatory statements could not be interpreted by a reasonable jury to be libelous or slanderous towards the Pratts. The Pratts argue, however, that even if Utah law recognizes a "so-called" group defamation rule, they may be able to convince a jury that the words used by the Defendants at the press conference, even without the aid of the Kingston Complaint, referred to them and that they should, therefore, have been allowed to proceed to trial.

¶ 20 It is clear under Utah law that defamatory statements concerning a group or class of people may not be actionable by each individual member of the defamed group or class. "In order to state a claim for defamation under Utah law, a plaintiff must show [among other things,] 'that defendants published the statements *concerning him* [either in print or by spoken words] ....' " *Wayment v. Clear Channel Broad., Inc.*, 2005 UT 25, ¶ 18 n. 2, 116 P.3d 271 (emphasis added) (second alteration in original) (citation omitted). Thus, under Utah law, in order for defamatory statements "to be regarded actionable they must refer to some ascertained or ascertainable person, and that person must be the person complaining, shown to be such by directly being named, or so intended from the extrinsic facts and circumstances." *Lynch v. Standard Publ'g Co.*, 51 Utah 322, 170 P. 770, 773 (1918). , *See also Fenstermaker v. Tribune*

---

7. In its ruling, the trial court noted that it "cannot say unequivocally that the press statement is not covered by the judicial proceeding privilege," and put forth reasons why it arguably "could be protected by judicial privilege." Yet the trial court ultimately relied on other grounds in dismissing the Pratts' defamation claims insofar as they were premised on statements other than those made in the Kingston Complaint, which leads us to conclude that the trial court's insights on whether the judicial privilege extended to Nelson's Press Statement never culminated in an actual legal ruling.

8. In the trial court's view, none of Nelson's allegedly defamatory statements ever directly mentioned the Pratts by name and, aside from the Kingston Complaint, none of the extrinsic facts and circumstances demonstrated that the statements were intended to specifically refer to the Pratts. The trial court found that the allegedly defamatory statements merely referred generally to large groups of people, i.e., "the Kingston Polygamist Family," "leaders of the Kingston organization," etc., and not the Pratts specifically, thus barring their action for defamation.

*Publ'g Co.,* 12 Utah 439, 43 P. 112, 114 (1895) (stating that defamatory statements "must refer to some ascertained or ascertainable person" in order to be actionable). It follows then, as the Utah Supreme Court has stated, that

> where words defamatory in their character seem to apply to a particular class of individuals, and are not specifically defamatory of any particular member of the class, an action can be maintained by any individual of the class *who may be able to show the words referred to himself.*

*Lynch,* 170 P. at 773 (emphasis added). *See also Fenstermaker,* 43 P. at 114; W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 111, at 784 (5th ed.1984). It also necessarily follows, however, that "[w]here the defamatory matter has no special application and is so general that no individual damages can be presumed, and the class referred to is so numerous that great vexation and oppression might grow out of a multiplicity of suits, *no private suit can be maintained.*" *Lynch,* 170 P. at 774 (emphasis added) (internal quotations and citation omitted). *See Fenstermaker,* 43 P. at 114; W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 111, at 784 (5th ed.1984).

¶ 21 The Restatement's "Defamation of a Group or Class" rule, which we apply to the instant case, concisely states the principles Utah case law has espoused in the group defamation context:

> One who publishes defamatory matter concerning a group or class of persons is subject to liability to an individual member of it if, *but only if,*
>
> (a) the group or class is so small that the matter can reasonably be understood to refer to the member, or
>
> (b) the circumstances of publication reasonably give rise to the conclusion that there is particular reference to the member.

Restatement (Second) of Torts § 564A (1977) (emphasis added). The Pratts argue that under the above rules a jury could reasonably make the connection between the Pratts and the statements made during the press conference, even without reference to the Kingston Complaint, but the facts of this case prevent that conclusion. Indeed, without the aid of the Kingston Complaint, the Defendants' statements at the press conference cannot reasonably be understood to refer, with any particularity, to the Pratts.

¶ 22 The only place where the Pratts are identified by name is in the Kingston Complaint, where they are listed with some 200 other individual defendants. Without the Kingston Complaint, the Pratts can only point to the Defendants' group references and argue that such statements defame them as individuals. Admittedly, under the right circumstances the references to a group such as "the Kingston Polygamist Family" might reasonably be understood to refer to an individual surnamed Kingston. *See Fenstermaker,* 43 P. at 114 (allowing head of a family to maintain an action for defamation where defamatory statements were made about "a family named Fenstermaker"). *But see* Restatement (Second) of Torts § 564A cmt. a, illus. 1 (1977) (giving hypothetical example where defamatory statements about a large family would not be actionable by individual family members). In fact, if the Pratts were widely known as members of "the Kingston Polygamist Family," the Pratts might very well be able to maintain an action on such statements, even without referring to the Kingston Complaint. *See Fawcett Publ'ns, Inc. v. Morris,* 377 P.2d 42, 51–52 (Okla.1962) (holding that a single member of a large university football team could maintain a lawsuit for libel for general statements about the team since he was "well known and identified in connection with the group" and because he "ha[d] sufficiently established his identity as one of those libeled by the publication"), *cert. denied,* 376 U.S. 513, 84 S.Ct. 964, 11 L.Ed.2d 968 (1964). *See also* Restatement (Second) of Torts § 564A cmt. b (observing that a statement such as " 'That jury was bribed' may reasonably be understood to mean that each of the twelve jurymen has accepted a bribe," giving each member a cause of action for defamation). *Cf. id.* § 564A cmt. a (observing that the statement " 'All lawyers are shysters,' ... cannot ordinarily be taken to have personal reference to any of the class"). The nature and size of

the group must be such that "the words may reasonably be understood to have personal reference and application to any member of it, so that he is defamed as an individual." *Id.* § 564A cmt. b.

¶ 23 In the instant case, the nature and size of the groups referred to, and the circumstances of publication, do not lend themselves to any reasonable understanding that they have personal application to the Pratts. While the Pratts argue that it is for a jury to decide whether they can be connected to Defendants' statements about the group or groups mentioned, we conclude that the trial court properly resolved the issue on summary judgment. Indeed, there is nothing in the record before us, other than the Kingston Complaint, that makes a connection between the Pratts and the group or groups identified in the Defendants' statements. There was no dispute of fact that only general references were made at the press conference to groups and that the Pratts were never mentioned by name, and nothing in the record gives rise to any sort of reasonable understanding that the Pratts were included in the extrajudicial references to these groups. We therefore conclude that the trial court properly disposed of this issue on summary judgment.

## CONCLUSION

¶ 24 We do not reach the merits of the Pratts' challenge on appeal against the trial court's application of the judicial proceeding privilege to the Kingston Complaint, because the Pratts invited any error in the trial court's ruling. As a result, we affirm the trial court's ruling dismissing the Pratts' claims that are founded upon their names appearing in the Kingston Complaint. Consequently, the Pratts cannot rely on any references to them in the Kingston Complaint to support their claims based on statements the Defendants made at the press conference. The Defendants' statements cannot, therefore, be reasonably understood to refer to the Pratts without the aid of the Kingston Complaint. The only other statements alleged to be defamatory refer to larger amorphous groups and are not actionable by the Pratts. Thus, the trial court's summary judgment ruling in favor of the Defendants was proper.

¶ 25 Affirmed.

¶ 26 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge and RUSSELL W. BENCH, Associate Presiding Judge.