2007 UT App 73

Reid DIMICK, individually and as the personal representative of the Estate of Catherine Dimick; and Christopher Dimick, individually, Plaintiffs and Appellants,

v.

OHC LIQUIDATION TRUST, successor in interest to Oakwood Mobile Homes, Inc., et al.; University Homes, Inc. dba Happy Homes; Happy Homes Vernal; et al., Defendants and Appellee.

No. 20050969–CA.

Court of Appeals of Utah.

March 1, 2007.

Bradley L. Booke and Robert D. Strieper, Moriarity Badaruddin & Booke LLC, Salt Lake City, and Ryan M. Springer, G Erin Nielson & Associates, Holladay, for Appellants.

Terry M. Plant and H. Justin Hitt, Plant Christensen & Kanell, Salt Lake City, for Appellee.

1. Reid appeals in his individual capacity and as the personal representative of the estate of Catherine Dimick.

Before GREENWOOD, Associate P.J., BILLINGS and THORNE, JJ.

## OPINION

THORNE, Judge:

¶1 Plaintiffs Reid[1] and Christopher Dimick (the Dimicks) collectively appeal the district court's grant of Defendant OHC Liquidation Trust's[2] (Oakwood) motion for summary judgment. We affirm.

## BACKGROUND

¶2 Before reciting the facts, we note that in reviewing a grant of a motion for summary judgment, "we are to review the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Hale v. Beckstead*, 2005 UT 24, ¶2, 116 P.3d 263 (quotations and citation omitted). We state the facts in this case accordingly.

¶3 On May 18, 1998, University Homes, Inc., doing business as Happy Homes, ordered a manufactured home from Oakwood Mobile Homes, Inc. for its outdoor sales lot in Helper, Utah. In June 1998, the home was delivered to the Happy Homes sales lot. On March 11, 2000, Christopher and his mother, Catherine Dimick, toured the manufactured home on the Happy Homes sales lot in Helper. When they toured the home it had been sitting on the sales lot for almost two years, and had been shown countless times to other potential buyers. During the tour of the home they saw deer mouse nests and droppings in a bedroom closet. That same day Christopher contracted to purchase the home. On May 22, 2000, the home was delivered to his property in Price, Utah.

¶4 On May 27, 2000, Catherine fell ill with hantavirus. On May 30, 2000, Catherine died, and Christopher fell ill with hantavirus and became permanently disabled as a result. Catherine and Christopher were allegedly exposed to the hantavirus when they came in contact with the deer mouse nests and drop-

2. OHC Liquidation Trust is the successor in interest to several corporate entities that were involved in this matter. We refer to OHC Liquidation Trust and the corporate entities succeeded by OHC Liquidation Trust as Oakwood.

pings during the tour of the home. On April 11, 2002, the Dimicks filed a complaint against Oakwood, as well as the owners and operators of the Happy Homes sales lot. The complaint asserted claims for strict liability, wrongful death, breach of implied warranty of fitness for a particular purpose, breach of warranty of merchantability, breach of express warranty, negligent failure to warn, and premises liability.

¶ 5 On October 14, 2004, Oakwood filed a motion for summary judgment. A hearing was held on February 28, 2005, and on April 14, 2005, the district court granted Oakwood's motion for summary judgment. In granting summary judgment on the Dimicks' strict products liability claim,[3] the district court held that the Dimicks failed to rebut the presumption that the home was free from any defect because the home complied with government standards. The district court also held that the Dimicks offered no evidence to show that the home was unreasonably dangerous or that a defect existed at the time the home was sold, and no evidence that a defective condition was the proximate cause of Catherine's death or Christopher's injuries. The Dimicks now appeal.[4]

## ISSUE AND STANDARD OF REVIEW

■ ¶ 6 The Dimicks assert that the trial court erred in granting summary judgment on their strict products liability claim. Summary judgment is proper when no genuine issues of material fact exist and "the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "We review a summary judgment determination for correctness, granting no deference to the [district] court's legal conclusions." *Wayment v. Clear Channel Broad., Inc.*, 2005 UT 25, ¶ 15, 116 P.3d 271 (alteration in original) (quotations and citation omitted).

3. On appeal, the Dimicks contest the merits of the summary judgment award regarding only their strict products liability claim. The Dimicks assert procedural grounds for appealing the district court's grant of summary judgment pertaining to their other claims. Thus, we only recite the district court's factual findings and legal conclusion regarding the Dimicks' strict products liability claim.

## ANALYSIS

### I.   Strict Products Liability

■ ¶ 7 The Dimicks contend that the district court erred in granting summary judgment on their strict products liability claim because reasonable jurors could find that Oakwood designed a defect into its home. The alleged defect consists of thirty to fifty utility holes, purposely drilled for piping, utility, and venting connections, and left uncovered by Oakwood in the sub-flooring and exterior of the home it manufactured that is the subject of this litigation. The Dimicks assert that deer mice infected with hantavirus entered the home through one of the utility holes, built a nest, and left droppings in a bedroom closet. Upon coming in contact with the nest and droppings, Christopher and Catherine were exposed to the virus that caused his injury and her death.

■ ¶ 8 Products liability claims require proof of a defective product, which can include manufacturing flaws, design defects, and inadequate warnings regarding use. *See Bishop v. GenTec Inc.*, 2002 UT 36, ¶ 25, 48 P.3d 218. The defect alleged in this case is one of design defect. To prevail on a strict products liability claim, a plaintiff must demonstrate "(1) that the product was unreasonably dangerous due to a defect or defective condition, (2) that the defect existed at the time the product was sold, and (3) that the defective condition was a cause of the plaintiff's injuries." *Burns v. Cannondale Bicycle Co.*, 876 P.2d 415, 418 (Utah Ct.App.1994) (quotations and citation omitted). Under the theory of strict products liability, Oakwood would be liable if the home was unreasonably dangerous to Christopher and Catherine because of a design defect existing at the time the product was sold, and if the defective condition was the cause of their injuries.

4. The Dimicks' appeal included a claim that the district court erred in granting 54(b) certification. *See* Utah R. Civ. P. 54(b). However, the Dimicks withdrew this claim at oral argument before this court, and we therefore do not address it.

"[U]nreasonably dangerous" means that the product was dangerous to an extent beyond which would be contemplated by the ordinary and prudent buyer, consumer or user of that product in that community considering the product's characteristics, propensities, risks, dangers and uses together with any actual knowledge, training, or experience possessed by that particular buyer, user or consumer.

Utah Code Ann. § 78–15–6(2) (2002).

¶ 9 The injury alleged in this case appears to have occurred prior to the actual purchase of the home when the Dimicks inspected the home and were exposed to the mouse droppings. We recognize that the pre-sale injury in this case is not the classic products liability case contemplated by Utah Code section 78–15–6, which seemingly requires that there be an actual sale. *See id.* § 78–15–6(1) ("No product shall be considered to have a defect or to be in a defective condition, unless at the time the product was *sold* by the manufacturer or other initial seller, there was a defect or defective condition in the product which made the product unreasonably dangerous to the user or consumer." (emphasis added)). A cause of action sounding in strict products liability may be cognizable when a product is being held out for sale and causes injury to a prospective purchaser who is using the product. *See Rivera–Emerling v. M. Fortunoff of Westbury Corp.*, 281 A.D.2d 215, 721 N.Y.S.2d 653, 654–55 (2001); *see also Delaney v. Towmotor Corp.*, 339 F.2d 4, 6 (2d Cir.1964); Restatement (Third) of Torts: Products Liability § 20(b) (1998). However, the parties did not address or brief this issue. Thus, we do not decide whether a seller's liability for harm extends to pre-sale injuries, and instead decide the case on other grounds.

¶ 10 Applying the strict products liability principles previously stated to the instant case, we conclude that the Dimicks have failed to demonstrate that the holes drilled for utility connections rendered the home unreasonably dangerous. The Dimicks purchased a prefabricated home that was delivered in two pieces, and had been on display outdoors on the Happy Homes lot for several years. Like other homes, it was susceptible to insects and rodents. The ordinary and prudent buyer of a home should understand that any home is susceptible to insects and rodents indigenous to the area, especially a manufactured home left vacant in a lot. There is little reason to believe that, absent the pre-drilled utility holes, the home was not susceptible to insects and rodents. Thus, we cannot say that the home as designed with utility connections drilled into the sub-flooring and exterior of the home was unreasonably dangerous to an extent beyond which would be contemplated by the ordinary and prudent buyer or user of the product in the community, considering the product's general characteristics. Therefore, the Dimicks have failed to establish the first element of their strict products liability claim, an unreasonably dangerous design, even to the minimal level required to raise a factual dispute and defeat summary judgment.[5]

¶ 11 In sum, the Dimicks have failed to raise genuine issues of material fact to establish that the utility holes constitute a design defect that existed at the time the home was sold. Therefore, the district court did not err in dismissing the Dimicks' claim for strict products liability.

## II.  Admissibility of Evidence

¶ 12 The Dimicks also allege that the district court erred in admitting and relying on a "HUD Compliance Assurance Inspection Form" (the HUD Form) they claim to be inadmissible hearsay. Generally, " '[t]he admissibility of an item of evidence is a legal question.' " *Gorostieta v. Parkinson*, 2000 UT 99, ¶ 14, 17 P.3d 1110 (quoting *Jensen v. Intermountain Power Agency*, 1999 UT 10, ¶ 12, 977 P.2d 474). "Nevertheless, because application of the hearsay rules in a specific case is so highly fact-dependent, a district court's conclusions on such issues are entitled to some measure of deference." *Wayment v. Clear Channel Broad., Inc.*, 2005 UT 25, ¶ 44, 116 P.3d 271.

---

5.  Because we hold that the Dimicks failed to establish the first prong of their strict products liability claim we do not address the second and third prongs of their claim.

¶ 13 Oakwood submitted the HUD Form in its memorandum in support of its motion for summary judgment in an attempt to invoke the rebuttable presumption, found in Utah Code section § 78–15–6(3), that a home is free of defects if it was constructed in accordance with government standards applicable at the time. Section 78–15–6(3) provides that:

> There is a rebuttable presumption that a product is free from any defect or defective condition where the alleged defect in the plans or designs for the product or the methods and techniques of manufacturing, inspecting and testing the product were in conformity with government standards established for that industry which were in existence at the time the plans or designs for the product or the methods and techniques of manufacturing, inspecting and testing the product were adopted.

Utah Code Ann. § 78–15–6(3).

¶ 14 Because we conclude, without relying on the HUD Form, that the Dimicks failed to present evidence that the holes constituted a design defect in this case, we do not address whether the district court erred in admitting the document. Moreover, although the district court held that the Dimicks failed to rebut the presumption, it also made other findings sufficient in and of themselves to justify its grant of summary judgment.[6] Therefore, we will not address the parties' arguments pertaining to this issue.

### III. Issues Raised In Reply Memorandum

¶ 15 Lastly, the Dimicks contend that the district court erred in considering issues raised for the first time in Oakwood's reply memorandum submitted in support of their motion for summary judgment. Specifically, they assert that Oakwood's motion for summary judgment addressed only the Dimicks' strict products liability claim. Therefore, they allege that Oakwood's arguments pertaining to the Dimicks' claims for wrongful death, breach of implied warranty of merchantability, breach of express warranty, negligent failure to warn, and premises liability, which were included for the first time in the Oakwood's reply memorandum should be considered waived.

¶ 16 "Generally, appellate courts grant '[a] trial judge ... broad discretion in determining how a [case] shall proceed in his or her courtroom.' " *Pratt v. Nelson,* 2005 UT App 541, ¶ 12, 127 P.3d 1256 (alterations in original) (quoting *University of Utah v. Industrial Comm'n,* 736 P.2d 630, 633 (Utah 1987)), *cert. granted,* 133 P.3d 437 (Utah 2006). Although rule 7 of the Utah Rules of Civil Procedure restricts a party's reply memorandum to rebuttal of matters raised in the opposing party's opposition memorandum, the rule also allows the trial court discretion to consider other memoranda. *See* Utah R. Civ. P. 7(c)(1); *see also Pratt,* 2005 UT App 541 at ¶ 12, 127 P.3d 1256. " '[A]s a matter of judicial economy, where there is no prejudice (i.e., where the opposing party is able to respond) and where the issues could be raised simply by filing a motion to dismiss, the trial court has discretion to consider arguments raised for the first time in a reply memorandum.' " *Pratt,* 2005 UT App 541 at ¶ 12, 127 P.3d 1256 (quoting *Trillium USA, Inc. v. Board of County Comm'rs,* 2001 UT 101, ¶ 17 n. 3, 37 P.3d 1093).

¶ 17 Here, the Dimicks argued in their memorandum in opposition to Oakwood's motion for summary judgment that Oakwood's motion should be treated as a motion for partial summary judgment because Oakwood requested judgment only on the Dimicks' strict products liability claim. In so asserting, the Dimicks chose to address only the strict products liability theory and requested leave to supplement their opposition if Oakwood asserted otherwise. Oakwood replied that it had addressed all of the allegations that appeared to be directed toward Oakwood, i.e., only claims for strict products liability and breach of implied warranty of merchantability. Once Oakwood recognized that the Dimicks intended to pursue all of their asserted claims against Oakwood, Oak-

---

6. The district court also held that the Dimicks offered no evidence that the home was unreasonably dangerous due to an actual defect or defective condition. Nor did they offer any evidence that a defect existed at the time the home was sold.

wood proceeded to address the remaining claims in its reply memorandum.

¶ 18 At the hearing on Oakwood's motion for summary judgment, the Dimicks argued that Oakwood's arguments raised for the first time in Oakwood's reply memorandum should be considered waived. In response, Oakwood asserted that the issues were preserved in its opening memorandum, but stated that it would respect the court's decision to treat the motion as a partial summary judgment. Despite this dispute, the parties proceeded to argue the evidence pertaining to all of the Dimicks' claims. The district court did not specifically rule on this issue, but granted summary judgment on all of the Dimicks' claims. Thereafter, the Dimicks filed an objection to the proposed order, again asserting that Oakwood waived the issues raised for the first time in the reply memorandum. The district court confirmed its order without specifically ruling on the issue.

¶ 19 Given the facts of this case, we find no prejudice to the Dimicks. The Dimicks in their memorandum in opposition to Oakwood's motion for summary judgment requested leave to supplement their opposition if Oakwood asserted summary judgment as to all of the Dimicks' claims. When Oakwood replied seeking summary judgment on all of the Dimicks' claims, the Dimicks did not file any supplemental briefing, request further leave to supplement their opposition, or request additional time to respond. Therefore, the Dimicks may not now assert that they were blind-sided or otherwise prejudiced. Thus, the trial court did not err in considering issues raised for the first time in Oakwood's reply memorandum.

## CONCLUSION

¶ 20 The Dimicks provided no evidence that the thirty to fifty utility holes allegedly designed into the house rendered the home unreasonably dangerous. Thus, the Dimicks have failed to establish that the holes constitute a design defect that existed at the time the home was sold.

¶ 21 Additionally, the evidence in this case, even without relying on the HUD Form or the rebuttable presumption it creates, is sufficient to support the district court's grant of summary judgment. Lastly, the district court has discretion to consider arguments raised for the first time in a reply memorandum. The Dimicks had sufficient time to respond, and did not renew their request for additional time as contemplated in their memorandum in opposition to summary judgment. Therefore, we conclude that the district court's award of summary judgment regarding all of the Dimicks' claims was appropriate.

¶ 22 We affirm.

¶ 23 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, and JUDITH M. BILLINGS, Judge.