Betty J. MAXWELL, Plaintiff
and Appellee,

v.

Otis C. MAXWELL, Defendant
and Appellant.

No. 890252–CA.

Court of Appeals of Utah.

July 27, 1990.

Franklin L. Slaugh, Sandy, for defendant and appellant.

David A. McPhie, Salt Lake City, for plaintiff and appellee.

Before BENCH, GREENWOOD and LARSON,[1] JJ.

## OPINION

GREENWOOD, Judge:

Appellant Otis C. Maxwell appeals the trial court's order that he pay Appellee Betty J. Maxwell one-half of his gross or total retirement income as previously ordered in their stipulated divorce decree and $1,419 in accumulated arrearages representing the difference between gross and net retirement payments. Otis claims the trial court's order violates the Uniformed Services Former Spouses Protection Act, 10 U.S.C.A. § 1408 (1983) (USFSPA). We affirm.

On November 12, 1987, Otis and Betty were divorced by decree of divorce entered pursuant to a stipulation executed by the parties. Paragraph eight of the decree ordered that each of the parties be awarded one-half of all retirement benefits accrued by Otis through his service in the United States Army and that one-half of the total amount of benefit be paid each month to Betty.

Following the decree, Otis personally paid Betty one-half of his gross retirement military benefits every month. Beginning in January 1988, Otis's total retirement benefits increased by $40 per month. He did not include one-half of this increase, $20 per month, in his payments to Betty for January or February 1988. Pursuant to arrangement with the United States Department of Army, beginning in March 1988, the Army transmitted direct payments to Betty from Otis's retirement pay. However, taxes were deducted from the total retirement benefits before division and payment to Betty. Consequently, Betty received $129 per month less than one-half of Otis's total retirement benefits.

On June 28, 1988, Betty filed a motion with the trial court for an order to show cause. She requested the court to order Otis to pay her one-half of his total military retirement pay as ordered by the divorce decree. The Court Commissioner recommended that Otis pay only the $40 for the increase in his retirement benefits for January and February 1988. Upon objection, the trial court reviewed the matter without an evidentiary hearing, made findings, and concluded there was no basis to modify the divorce decree. The trial court ordered Otis to pay Betty the $40 and $1,419 in arrearages for her one-half share of the $258 monthly tax deduction from Otis's retirement pay from March 1988 through January 1989. The trial court also ordered Otis

> to initiate and complete an allotment payable to plaintiff [Betty] from the military retirement benefits payable to him, so as to cause one-half of all deductions made from his retirement benefits paid to plaintiff so that none of the deductions from his military retirement benefits come out of the plaintiff's one-half share of his gross retirement benefits. Until said allotment becomes effective, defendant [Otis] shall pay to the plaintiff directly her one-half of said deduction or withholdings from retirement pay commencing with the month of February, 1989.

On appeal, Otis argues that (1) USFSPA prohibits state courts from treating total or gross retired pay as marital property; and (2) he did not waive his rights under USFSPA. Since his claims are questions of law, we review them under a correction of error standard, giving no deference to the trial court. *Bountiful v. Riley*, 784 P.2d 1174, 1175 (Utah 1989); *Western Kane County Special Serv. Dist. No. 1 v. Jackson Cattle Co.*, 744 P.2d 1376, 1378 (Utah 1987).

## USFSPA

In *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), the United States Supreme Court held that the federal statutes then governing military retirement pay prevented state courts

---

1. John Farr Larson, Senior Juvenile Court Judge, sitting by special appointment pursuant to Utah Code Ann. § 78-3-24(10) (Supp.1990).

from dividing military retirement pay pursuant to state community property laws because of federal preemption.[2] In direct response to *McCarty*, Congress enacted USFSPA, which provides that "a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." 10 U.S.C.A. § 1408(c)(1) (1983). "Disposable retired or retainer pay" is gross retirement pay less authorized deductions, including amounts properly deducted for federal, state, or local taxes. 10 U.S.C.A. § 1408(a)(4)(C) (1983).[3] USFSPA also created a direct payment mechanism which authorizes the appropriate military financial centers to pay directly to former military spouses who qualify under the Act, the court ordered apportioned share of a former spouse's retirement benefits. 10 U.S.C.A. § 1408(d)(1) (1983).

In *Mansell v. Mansell*, — U.S. —, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989), the Supreme Court specifically held that USFSPA does not give state courts the power to treat, as property divisible upon divorce, military retirement pay waived by the retiree in order to receive veterans' disability benefits. In *Mansell*, the husband received both Air Force retirement pay and, pursuant to a waiver of a portion of that pay, disability benefits. At the time of their divorce, the husband and wife entered into a property settlement which provided, in part, that the husband would pay the wife fifty percent of his total military retirement pay, including that portion of retirement pay waived so that the husband could receive disability benefits. The husband subsequently requested the court to modify the divorce decree by removing the provision that required him to share his total retirement pay with the wife. The husband argued that federal law pre-empted state law regarding all forms of military retirement pay and that USFSPA did not exempt his disability benefits from federal preemption.

*Mansell* determined that although USFSPA modifies the federal preemption rule in *McCarty*, it did not restore authority to states to determine questions of divisibility as to all types of military retirement pay. *Mansell* concluded that the Act only granted state courts discretion to divide "disposable retired or retainer pay." *Mansell*, 109 S.Ct. at 2028. The Supreme Court stated: "Thus, under the Act's plain language, state courts have been granted the authority to treat disposable retired pay as community property;[4] they have not been granted the authority to treat total retired pay as community property." *Id.*[5] Thus, it is clear under *Mansell* that USFSPA

**2.** Although *McCarty* involved state community property laws, it was widely accepted that "the *McCarty* analysis was equally applicable to equitable distribution jurisdictions." *Butcher v. Butcher*, 357 S.E.2d 226, 229 n. 2 (W.Va.1987).

**3.** Also deducted from total military retirement pay are amounts: (1) owed by the military member to the United States; (2) required by law to be deducted from total pay, including fines and forfeitures ordered by courts-martial, federal employment taxes, and amounts waived in order to receive disability benefits; (3) withheld pursuant to other provisions under the Internal Revenue Code; (4) deducted to pay government life insurance; and (5) deducted to create an annuity for a former spouse. 10 U.S.C.A. § 1408(a)(4)(A)–(F) (1983).

**4.** Although the Court refers solely to community property, it noted that its decision also covered equitable distribution states. *Mansell*, 109 S.Ct. at 2026 n. 2.

**5.** Prior to *Mansell*, courts in community property states, who had determined that under USFSPA federal law no longer pre-empted state community property law as it applied to military retirement pay, reasoned that USFSPA was not concerned with limiting the amount of retired pay available for division by state courts, but instead was simply a garnishment statute designed to set out the circumstances under which, pursuant to court order, the federal government will transmit direct payments to a former spouse. *See Casas v. Thompson*, 42 Cal.3d 131, 720 P.2d 921, 228 Cal.Rptr. 33, *cert. denied*, 479 U.S. 1012, 107 S.Ct. 659, 93 L.Ed.2d 713 (1986); *Beesley v. Beesley*, 114 Idaho 536, 758 P.2d 695, 698–99 (1988); *Grier v. Grier*, 731 S.W.2d 931, 932–33 (Tex.1987). *Mansell* rejected the garnishment argument and clearly stated that section 1408(c)(1) limits the extent to which state courts may treat military retirement pay as community or marital property. *Mansell*, 109 S.Ct. at 2028–30.

does not authorize state courts to treat gross retirement pay as marital property divisible upon divorce.[6]

## STIPULATION

Next, we must determine if the parties' stipulation negates the effect of *Mansell*. Otis contends that the stipulated divorce decree was a mistake since USFSPA mandates that only disposable retired pay is subject to division and because there is no evidence that he knowingly and specifically waived his rights under the Act. He concludes that the divorce decree should be corrected on appeal to provide that one-half of his disposable retirement income only should be payable to Betty.

We determine that Otis cannot avoid the decree by now claiming mistake in entering into the stipulation. While a property settlement agreement is not binding upon a trial court in a divorce action, such agreement should be respected and given considerable weight in the trial court's determination of an equitable division of property. *Clausen v. Clausen*, 675 P.2d 562, 564 (Utah 1983); *Nunley v. Nunley*, 757 P.2d 473, 475 (Utah Ct.App.1988). Further, stipulations are conclusive and binding on the parties unless, upon timely notice and for good cause shown, relief is granted therefrom. *Higley v. McDonald*, 685 P.2d 496, 499 (Utah 1984). The appropriate procedure to provide such notice and obtain relief from a judgment based on a mistakenly executed stipulation is to file a motion pursuant to Utah R.Civ.P. 60(b)(1), seeking relief because of "mistake, inadvertence, surprise, or excusable neglect," within three months after the judgment, order, or proceeding was entered. We reject Otis's attempt on appeal of the trial court's order to show cause, which enforces the stipulated divorce decree, to bootstrap himself to a "mistake" argument that should have been raised within three months after the original order was entered.[7] *See Peck v. Cook*, 29 Utah 2d 375, 510 P.2d 530, 530 (1973); *Whitehouse v. Whitehouse*, 790 P.2d 57, 61 (Utah Ct.App. 1990).

In addition, Otis has not filed a motion under Utah Rule of Civil Procedure 60(b)(5) asserting that the trial court's judgment is void for want of jurisdiction. Where a motion to vacate a judgment is based on a claim of lack of jurisdiction, the trial court has no discretion: if jurisdiction is lacking, the judgment cannot stand with-

---

**6.** A separate issue not addressed by Otis is whether the provisions of 10 U.S.C.A. § 1408(e)(1) (1983), stating that "[t]he total amount of the disposable retired or retainer pay of a member payable under subsection (d) may not exceed 50 percent of such disposable retired or retainer pay," limits a state from awarding more than fifty percent of the disposable pension for purposes of equitable distribution, alimony, or child support. *See Butcher v. Butcher*, 357 S.E.2d 226, 229–30 (W.Va.1987).

The Minnesota Court of Appeals, in *Deliduka v. Deliduka*, 347 N.W.2d 52 (Minn.Ct.App.1984), squarely addressed this issue. The Minnesota court determined that the fifty percent limitation in section 1408(e)(1) must be read in light of its reference to section 1408(d), the direct payment mechanism. The court concluded that section 1408(d) was an enforcement provision and that the reference to it in section 1408(e) meant only that the fifty percent limitation applied to instances where direct enforcement of the order was sought against the Secretary.

The Minnesota court noted that

[t]he trial court tried to give Mrs. Deliduka her half of the gross pension by ordering direct government payments to her under 10 U.S.C. § 1408. But since § 1408 limits direct payments to former spouses to 50 percent of *disposable* retired pay, direct payments alone would not result in Mrs. Deliduka receiving 50 percent of the *gross* pension.

The trial court erred only in its method of disbursing pension payments to the wife. To guarantee its intended division of marital property, the court, in addition to ordering direct government payments, should have ordered Mr. Deliduka to make monthly supplemental payments.

*Id.* at 56.

**7.** Otis cites *Greene v. Greene*, 751 P.2d 827 (Utah Ct.App.1988), in his attempt to urge us to correct the divorce decree. The facts in *Greene*, however, are clearly distinguishable from this case. In *Greene*, the parties agreed during the trial court hearing that federal law prohibited the former wife from receiving one-half of the former husband's gross military benefits. We held that the trial court properly amended the divorce decree to correct a mistake of fact, based on the in-court stipulation. *Id.* at 829–30. Neither party argued that the former spouse could be awarded more than fifty percent of benefits by stipulation of the parties.

out denying due process to the one against whom it runs. *State v. Vijil*, 784 P.2d 1130, 1132 (Utah 1989).

■ Such a motion, however, would fail in this case. On remand by the United States Supreme Court in *Mansell*, the California Court of Appeals determined that neither in *McCarty* nor in *Mansell* did the Supreme Court divest state courts of jurisdiction to divide military retirement benefits; the Court simply required state courts to apply federal law in determining the character of military pension benefits. *In re Marriage of Mansell*, 217 Cal.App.3d 219, 216 Cal.App.3d 937, 265 Cal.Rptr. 227, 231–34 (1989).

> While under the reasoning in *McCarty* the court should have applied federal rather than state law in determining the character of retired pay, it was within the court's jurisdiction to make that characterization, right or wrong. The judgment was therefore not void for want of subject matter jurisdiction.
>
> We do not consider this holding to be in conflict with *Mansell v. Mansell*, as we do not agree with Husband that the Supreme Court therein held state courts to be without subject matter jurisdiction where military disability pay is concerned. Rather, the Supreme Court's holding was quite narrow: FUSFSPA does not alter, with regard to non-disposable retired or retainer pay (including the pay at issue herein), the already-existing federal statutory structure which, according to *McCarty*, preempts state community property law. To the extent that *Mansell v. Mansell* is law of the case herein, it has no impact on the question of subject matter jurisdiction.

*Id.* at 232.

The California Court of Appeals concluded that it had subject matter jurisdiction to provide for disposition of military benefits as part of the divorce decree and that the former husband waived his right to assert that the court's division of such property was in excess of its jurisdiction, by signing a stipulation of settlement. *Id.* We adopt the reasoning of the California court, and find that the trial court had jurisdiction to enter the order regarding property division.

Affirmed.[8]

BENCH and LARSON, JJ., concur.

---

8. Because the military can forward to Betty only fifty per cent of net pay under current law, Otis will most likely need to continue to independently provide the differential amount.