IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Mark Lawrence Johnson, | ) | OPINION |
| | ) | |
| Petitioner and Appellant, | ) | Case No. 20100705-CA |
| | ) | |
| v. | ) | |
| | ) | F I L E D |
| Elizabeth Ann Johnson nka | ) | (January 26, 2012) |
| Elizabeth Ann Zoric, | ) | |
| | ) | 2012 UT App 22 |
| Respondent and Appellee. | ) | |

-----

Second District, Farmington Department, 840735185
The Honorable David M. Connors

Attorneys:     Raymond B. Rounds, Ogden, for Appellant
               Bryce M. Froerer, Ogden, for Appellee

-----

Before Judges Voros, Davis, and Christiansen.

VOROS, Associate Presiding Judge:

¶1      This appeal involves the allocation of the military retirement benefit of an employee spouse pursuant to a 1984 divorce decree. Mark Lawrence Johnson, a retiree from the United States Air Force, seeks review of the amount of his military retirement the trial court awarded to his ex-wife, Elizabeth Ann Zoric. We affirm in part, reverse in part, and remand for further proceedings.

BACKGROUND

¶2     Johnson and Zoric were married from 1974 to 1984.[1]  They had two children together.  During the marriage, Johnson accrued approximately ten years of service in the United States Air Force.  At the time of the divorce, Johnson was a Staff Sergeant at a pay grade of E-5.  In the divorce decree, the trial court awarded Zoric one-half of ten years of Johnson's military retirement.  Because Johnson's retirement had yet to vest, the trial court did not determine a specific amount owed to Zoric.

¶3     In 1998, Zoric made an attempt to claim her portion of Johnson's retirement; however, the retirement office denied her application on the ground that the court order she submitted lacked specificity.  Thereafter, Zoric allegedly made statements to the parties' adult son to the effect that she was not intending to seek her portion of Johnson's retirement.  According to Johnson, the son conveyed those statements to Johnson and, as a result, he "made substantial changes in his life financially."

¶4     In 1999, Johnson retired and began receiving military retirement benefits.  At that time he was a Master Sergeant at a pay grade of E-7.  His military pension was thus calculated based on a pay grade of E-7.  In September 2000, Johnson received a veteran's disability award for various ailments that arose after the divorce.  Johnson's final retirement benefit was reduced by amounts Johnson received under that award.

¶5     Zoric next attempted to secure her portion of Johnson's military retirement in October 2008, when she filed a Qualified Domestic Relations Order (QDRO).[2]  In keeping with the 1984 divorce decree, the trial court awarded Zoric a share of Johnson's

---

1.  Contrary to the implication of Johnson's brief, the divorce court expressly found that "neither party has superior possession by way of morality over the other."

2.  The Retirement Equity Act of 1984, Pub. L. No. 98-397, 98 Stat. 1426 (1986) (codified as amended at 29 U.S.C. § 1056(d)(3)(B) (2010)), created what is known as a Qualified Domestic Relations Order, or QDRO.  *See Bailey v. Bailey*, 745 P.2d 830, 832 (Utah Ct. App. 1987).  A QDRO instructs "the trustee of a retirement plan and specifies how distributions should be made, to whom, and when.  Although a QDRO cannot order the payment of a benefit which is not allowed under a particular plan, it can order partial payment to an alternate payee (an ex-spouse, for example)."  *Id*.

actual monthly military retirement benefit. The court calculated her share based on Johnson's actual retirement benefit, which was based on Johnson's salary at the time of retirement, less the disability reduction. The trial court also calculated Zoric's share based on Johnson's gross monthly retirement benefit without first deducting federal, state, and local taxes. However, the trial court determined that the doctrine of laches barred Zoric from recovering her share of any retirement benefits paid before she filed the QDRO.

ISSUES AND STANDARDS OF REVIEW

¶6      Johnson first contends that the trial court erred by calculating Zoric's share of the retirement benefit using his pay grade at the time of retirement instead of his pay grade at the time of divorce. "A trial court has considerable discretion considering property [division] in a divorce proceeding, thus its actions enjoy a presumption of validity. We will disturb the trial court's division only if there is a misunderstanding or misapplication of the law such that a manifest injustice or inequity results, indicating an abuse of discretion." *Oliekan v. Oliekan*, 2006 UT App 405, ¶ 16, 147 P.3d 464 (applying this standard of review to distribution of a retirement benefit) (citation and internal quotation marks omitted).

¶7      Johnson next contends that the trial court erred by calculating Zoric's share of the retirement benefit based on his gross retirement pay rather than first deducting federal and state taxes. This contention presents a question of law, which we review for correctness. *See Maxwell v. Maxwell*, 796 P.2d 403, 404 (Utah Ct. App. 1990).

¶8      Johnson next contends that Zoric's claim is barred by the applicable statute of limitations. The application of a statute of limitations is a question of law, reviewed for correctness. *See Nolan v. Hoopiiaiana (In re Hoopiiaiana Trust)*, 2006 UT 53, ¶ 19, 144 P.3d 1129.

¶9      Finally, Johnson contends that Zoric's claim is barred by the common law doctrines of estoppel, waiver, and laches. These issues present mixed questions of law and fact. *See United Park City Mines Co. v. Stichting Mayflower Mountain Fonds*, 2006 UT 35, ¶ 21, 140 P.3d 1200; *Nunley v. Westates Casing Servs., Inc.*, 1999 UT 100, ¶ 31, 989 P.2d 1077; *Anderson v. Doms*, 1999 UT App 207, ¶ 8, 984 P.2d 392. We review the trial court's

legal conclusions for correctness and its factual findings for clear error.  *See United Park City Mines Co.*, 2006 UT App 35, ¶ 21; *Nunley*, 1999 UT 100, ¶ 31; *Anderson*, 1999 UT App 207, ¶ 8.


ANALYSIS

I.  Retirement Calculation:  Pay Grade

¶10    Johnson contends that the trial court erred in calculating Zoric's share of his retirement benefit based on Johnson's pay grade at the time of retirement rather than his pay grade at the time of the divorce.

¶11    An employee spouse's retirement benefits are subject to equitable distribution in a divorce proceeding, provided that the benefits "accrued in whole or in part during the marriage." *Woodward v. Woodward*, 656 P.2d 431, 433 (Utah 1982).  Where the benefits accrued in part during the marriage, the nonemployee spouse's share is calculated using what is commonly known as the time rule formula.  *See In re Marriage of Hunt*, 909 P.2d 525, 531 (Colo. 1995).  The time rule formula employs a "marital fraction" to calculate the nonemployee spouse's interest in the employee spouse's pension benefit:

> The marital fraction consists of the numerator[,] which is the number of years (or months if more accurate) that the employee spouse has earned towards the pension during the marriage, over the denominator, which is the number of years (or months if more accurate) of total service towards the pension.  The marital fraction is multiplied times the monthly benefit and divided in half (in order to divide the marital portion of the pension benefits).

*Id.*

¶12    Utah's version of the time rule formula was explained in *Woodward v. Woodward*, 656 P.2d 431 (Utah 1982).  In *Woodward*, the husband accrued fifteen years towards his government pension during the parties' marriage, but the parties divorced before the husband's pension had fully vested.  *See id.* at 431-32.  The husband needed to work

thirty years to qualify for a government contribution to his pension, which would be made at the time the husband retired, at least fifteen years after the divorce. *See id.* at 432. The issue was whether the amount of the husband's pension that would be contributed by the government at his retirement was a marital asset and thus apportionable by the trial court at the time of the divorce. *See id.* at 431-32. Much like the argument advanced by Johnson in the instant case, the husband in *Woodward* argued that the wife had no right to the amount of his pension that would be contributed by the government because that amount was contingent upon his continued government employment after the divorce. *See id.* at 432.

¶13     The supreme court held that the government contribution was a marital asset subject to equitable division and that "the wife [was] entitled to share in that portion of the benefits to which the rights accrued during the marriage." *Id.* at 433. Furthermore, because the husband had to "work for a total of thirty years, his pension benefits, including any contribution by the government, [were] as dependent on the first fifteen years as the last fifteen." *Id*. The court then described what has come to be known as the *Woodward* formula. Under that formula, "the marital property subject to distribution is a portion of the retirement benefits represented by the number of years of the marriage divided by the number of years of the husband's employment." *Id*. at 433-34. The non-employee spouse is then awarded a share of that amount. *Id.*

¶14     Here, the trial court applied the *Woodward* formula without elaboration. It divided the number of years of the marriage (ten) by the number of years of the husband's employment (twenty-four) and multiplied the quotient by the wife's share (one-half), yielding a percentage of 20.8%. Thus far the parties agree.[3] They part company on the question of what benefit amount this percentage should be applied to. The trial court applied it to Johnson's actual monthly retirement benefit, which is based on his pay grade at retirement, E-7.

¶15     Johnson maintains that Zoric's share should be calculated by using his pay grade at the time of the divorce, E-5. Johnson argues that using his pay grade at the time of retirement allows Zoric to unjustly reap the benefits of rank advancements that he

---

3. As explained below, based on a number of theories, Johnson does not concede that Zoric is entitled to any of his retirement benefit. But assuming she is entitled, Johnson agrees that she is entitled to 20.8%.

achieved—without her help—after the parties' divorce. Zoric responds that Johnson seeks the benefits of his post-divorce years of service without the burdens. While Johnson's years of service after the divorce allowed him to increase his pay grade and thus his retirement benefit, they also diluted Zoric's share from 50% to 20.8%. Thus, she reasons, if her portion of his retirement benefit is calculated based on his pay grade at the time of the divorce, it should likewise be calculated based on her spouse's share at the time of the divorce (50%). Similarly, Zoric argues that if Johnson alone enjoys the benefit of post-divorce pay grade increases, he alone should bear the burden of the deduction based on his post-divorce disability.

¶16    The approach advocated by Johnson is sometimes referred to as the "bright line" rule.[4] Cases applying this rule "equate post-dissolution pension benefit enhancements with post-dissolution earnings." *In re Marriage of Hunt*, 909 P.2d 525, 533 (Colo. 1995). A number of jurisdictions have applied this rule and held that the employee's salary at the time of the divorce should be used in calculating the spouse's share of a pension benefit. *See, e.g., Armstrong v. Armstrong*, 34 S.W.3d 83, 87 n.4 (Ky Ct. App. 2000) (collecting cases).

---

4. The bright line rule may not be as simple in application as its name implies:

> By logical extension, the "bright line" rule would require courts to attempt to parse out the "marital" portion of the post-dissolution enhancement from the "separate" portion, i.e., that portion attributable solely to the efforts of the employee spouse and not related to the marriage whatsoever. Implementation of the "time rule" formula, in the first instance, accomplishes that goal and removes courts from the complicated, time-consuming, inefficient, and hopelessly flawed task of evaluating the enhancement and denominating the enhancement as either marital, separate, passive, or some combination thereof. *See Turner* § 6.10 at 65 (2d ed. 1995 Supp.) (the time rule formula has the benefit of simplicity because "it avoids the need to draw messy distinctions between different types of postdivorce increases").

*Hunt*, 909 P.2d at 535.

¶17　The approach advocated by Zoric is sometimes referred to as the "marital foundation" theory. This approach treats post-divorce benefit enhancements as marital property. *See Hunt*, 909 P.2d at 532. Courts employing this method maintain that post-divorce rank enhancements are often attainable only due to the "foundation work and efforts undertaken during the marriage." *See id.* at 533-34 (gathering cases); *Bullock v. Bullock*, 354 N.W.2d 904, 910 (N.D. 1984) (noting that the husband's post-divorce "military career and earning ability were developed and enhanced throughout the course of the parties' seventeen year marriage"). In other words, this approach recognizes that an employee cannot achieve a rank of E-7 without having first achieved a rank of E-5, and so forth. It therefore uses the pay grade at the time of retirement to calculate the receiving spouse's share of the retirement benefit. *See Hunt*, 909 P.2d at 532-34.

¶18　Like the "marital foundation" approach, the *Woodward* formula applies the marital fraction to the employee spouse's actual "retirement benefits." *Woodward*, 656 P.2d at 433-34. *Woodward* never suggests that the marital fraction should instead be applied to a hypothetical figure based on what the employee spouse's retirement benefit would have been had he received no salary increases after the date of the divorce. To do so would add a significant step to the *Woodward* formula.

¶19　Moreover, as noted above, the *Woodward* court stated that because the husband "must work for a total of thirty years, his pension benefits, including any contribution by the government, are as dependent on the first fifteen years as the last fifteen." *Id.* This statement is consistent with the underlying rationale of the "marital foundation" theory, but inconsistent with the underlying rationale of the "bright line" theory advocated by Johnson.

¶20　The trial court here merely applied the *Woodward* formula as written, without taking the additional step that Johnson urges, but that *Woodward* itself never mentions. The trial court thus acted well within its discretion.

## II. Retirement Calculation: Net Benefit

¶21　Johnson next challenges the trial court's ruling that Zoric's share of the retirement benefit should be calculated "prior to the deduction of any taxes." Johnson

contends that "federal and state taxes should be removed from [his] disposable retired pay before any allocation is determined." We agree.

¶22    This court addressed this issue in *Maxwell v. Maxwell*, 796 P.2d 403 (Utah Ct. App. 1990). In *Maxwell*, we noted that the United States Former Spouses Protection Act, 10 U.S.C.A. § 1408 (1983) (USFSPA), provides that "a court may treat disposable retired or retainer pay payable to a member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." *Maxwell*, 796 P.2d at 405. (quoting 10 U.S.C.A. § 1408(c)(1)) (internal quotation marks omitted). As we further noted, the United States Supreme Court has interpreted this provision to mean that the USFSPA "only grant[s] state courts discretion to divide 'disposable retired or retainer pay.'" *Id.* (quoting *Mansell v. Mansell*, 490 U.S. 581, 586 (1989)). The USFSPA defines "disposable retired or retainer pay" as "gross retirement pay less authorized deductions, including amounts properly deducted for federal, state, or local taxes." *Id.* (citing 10 U.S.C.A. § 1408(a)(4)(C)). We therefore held in *Maxwell* that the Supreme Court had made "clear . . . that USFSPA does not authorize state courts to treat gross retirement pay as marital property divisible upon divorce." *Id.* at 406.

¶23    Accordingly, we reverse the ruling of the trial court on this issue and remand for the court to recalculate Zoric's portion of the retirement benefit using Johnson's "gross retirement pay less authorized deductions, including amounts properly deducted for federal, state, or local taxes." *Id.* (citing 10 U.S.C.A. § 1408(a)(4)(C)).[5]

III.  Statute of Limitations

¶24    Johnson next contends that Zoric's claim to a share of his pension benefits is barred by the statute of limitations. As stated above, the trial court awarded Zoric no portion of the retirement benefits paid before she filed the QDRO.[6] However, it did award her a share of benefits paid after the date she filed the QDRO. Johnson challenges this award.

---

5. Zoric does not defend the trial court's ruling on this point, but proposes "options for addressing [Johnson's] concerns with regard to payment of taxes." How best to achieve the result mandated by *Maxwell* and *Mansell* we leave to the trial court on remand.

6. Zoric does not challenge this ruling on appeal.

¶25    Johnson contends that Zoric's claim is wholly barred by the applicable statute of limitations.  He relies on Utah Code Section 78B-2-311, which states, "An action may be brought within eight years upon a judgment or decree of any court of the United States, or of any state or territory within the United States."  Utah Code Ann. § 78B-2-311 (2008).  He argues that although the decree was entered in 1984, Zoric "failed to do anything to secure any kind of payment on that decree until 2008, nearly twenty-four years after the decree had been entered" and "more than nine years after [Johnson's] retirement."

¶26    Johnson's argument is foreclosed by *Seeley v. Park,* 532 P.2d 684 (Utah 1975).  The question before the court in *Seeley* was "whether or not the statute of limitation applies to past due unpaid installments under a divorce decree."  *Id*. at 684.  The court held that "[i]nstallments under a decree of divorce for alimony or support of minor children become final judgments as soon as they are due and cannot thereafter be modified."  *Id*. Accordingly, "the statute begins to run against the judgment from the time fixed for the payment of each installment for the part then payable."  *Id*. at 685 (quoting *Simmons v. Simmons*, 290 N.W. 319, 320 (S.D. 1940)).

¶27    Although *Seeley* did not expressly address pension benefits, we see no reason—and Johnson suggests none—why it should not apply to them.  Moreover, exempting retirement benefits from *Seeley*'s rule could result in an unacceptable anomaly in cases such as this.  If the limitations period had begun to run upon entry of the decree, it would have expired on Zoric's retirement benefits claim before Johnson missed his first payment.  Such an outcome would be troublesome at the very least.  *See Berry v. Beech Aircraft Corp.,* 717 P.2d 670, 682-86 (Utah 1985) (invalidating a statute under Article I, Section 11 of the Utah Constitution because it was a statute of repose that barred certain claims before the cause of action accrued).

¶28    Accordingly, we conclude that the trial court did not err in rejecting Johnson's argument that the limitations period should run from the date of the decree.

IV.  Common Law Defenses

¶29    Finally, Johnson argues that the trial court erred in rejecting his common law defenses of estoppel, waiver, and laches.  We decline to address the merits of these arguments because they are inadequately briefed.

¶30    An adequately briefed argument "contains the contentions and reasons of the appellant with respect to the issues presented, including the grounds for reviewing any issue not preserved in the trial court, with citations to the authorities, statutes, and parts of the record relied on." Utah R. App. P. 24(a)(9). An issue is inadequately briefed "when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." *State v. Thomas*, 961 P.2d 299, 304 (Utah 1998). The reviewing court "'is not simply a depository in which the appealing party may dump the burden of argument and research.'" *State v. Bishop*, 753 P.2d 439, 450 (Utah 1988) (quoting *Williamson v. Opsahl*, 416 N.E.2d 783, 784 (Ill. App. Ct. 1981)). "And we may refuse, sua sponte, to consider inadequately briefed issues." *State v. Lee*, 2006 UT 5, ¶ 22, 128 P.3d 1179 (citing Utah R. App. P. 24(j); *Bernat v. Allphin*, 2005 UT 1, ¶ 38, 106 P.3d 707).

¶31    The section of Johnson's brief addressing estoppel, waiver, and laches does not satisfy the requirements of rule 24 of the Utah Rules of Appellate Procedure. Although Utah courts have thoroughly addressed these doctrines, the brief cites no Utah cases. Nor does it cite to the "parts of the record relied on" as required by rule 24. *See* Utah R. App. P. 24(a)(9). "We recognize that lawyers operate within practical constraints. . . . Nevertheless, our system is designed so that the 'appellant must do the heavy lifting,'" *Niemela v. Imperial Mfg., Inc.*, 2011 UT App 333, ¶ 24, 263 P.3d 1191 (quoting *State v. Robison*, 2006 UT 65, ¶ 21, 147 P.3d 448). Accordingly, we decline to reach these issues.


CONCLUSION

¶32    The trial court acted well within its discretion in applying the *Woodward* formula as written rather than adding a step to that formula not included by our supreme court. In addition, the court did not err in rejecting Johnson's statute of limitations argument. However, the trial court acted in violation of controlling law by calculating Zoric's share of Johnson's military retirement benefit before adjusting Johnson's benefit for state and federal taxes. Finally, we decline to reach the merits of Johnson's inadequately briefed estoppel, waiver, and laches challenges.[7]

---

7. Both parties seek their attorney fees on appeal. We award no fees.

¶33     Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

_____

J. Frederic Voros Jr.,
Associate Presiding Judge

-----

¶34     I CONCUR:

_____

Michele M. Christiansen, Judge

-----

James Z. Davis, Judge (concurring in part and dissenting in part):

¶35     I concur in the majority's opinion except as to Part I.  I think the trial court should have used the salary Johnson would have been earning at the time of retirement if he had continued at the E-5 rank in calculating Zoric's share of the retirement benefit.

¶36     First, I disagree with the majority's assertion that the trial court's calculation of the benefit was subject to an abuse of discretion standard.  Certainly, a trial court's award of retirement benefits is entitled to deference.[1]  *See Oliekan v. Oliekan*, 2006 UT

_____

1. There is nevertheless "an order to" the process of property distribution.  *See Hodge v. Hodge*, 2007 UT App 394, ¶ 5, 174 P.3d 1137 (mem.).  In dividing marital property, a trial court is expected to "recognize the presumption that [e]ach party is . . . entitled to all of his or her separate property and fifty percent of the marital property."  *Id.* (alteration and omission in original) (internal quotation marks omitted).  In order to depart from

(continued...)

App 405, ¶ 16, 147 P.3d 464. But the award itself was determined by the trial court when the parties divorced in 1984: Zoric was awarded half of the marital share of the retirement benefit, to be paid as Johnson began receiving the retirement benefit. When Zoric sought to actually obtain her share of the retirement benefits in 2008, the trial court was tasked only with determining whether the additional benefit realized as a result of Johnson's promotion was subject to distribution under the *Woodward* formula, a determination that, unlike the award itself, is not entitled to deference. Where a party has been awarded an equal share of the marital portion of the other party's retirement, as here, the correct calculation is a matter of law because it turns on the question of what portion of the retirement benefit constitutes marital property. *See generally Poll v. Poll*, 2011 UT App 307, ¶ 6, 263 P.3d 534 (explaining that the question of whether property is marital or separate is a question of law, which we review for correctness), *cert. denied*, No. 20110894 (Utah Jan. 17, 2012).

¶37     I believe that the entire difference between the E-7 retirement benefit and the E-5 retirement benefit should be considered separate property, as a matter of law, and that Zoric should not be entitled to a 20.8% share of that difference. Thus, I disagree with both the "bright line" theory and the "marital foundation" theory, *see supra* ¶¶ 16-17, as used in the context of this case. This is not a situation where the employee spouse received normal raises, such as cost of living and the like, while continuing in the same employment. In such a situation, I would agree with the majority that the marital foundation theory is the more appropriate approach. But in this case, Johnson received a promotion to a position with a higher pay grade. Zoric did not contribute to this promotion, which occurred after the marriage ended.[2] Unlike periodic raises,

---

1. (...continued)
that presumption, the trial court must make a specific finding of "exceptional circumstances warranting such a departure." *Id.* (internal quotation marks omitted). Unless such circumstances are found, the trial court may not award a party less than his or her equal share of the marital property. The trial court also has significant discretion to determine how best to achieve the equal distribution, *see id.* ¶ 4; *Boyer v. Boyer*, 2011 UT App 141, ¶¶ 10-11, 259 P.3d 1063, although deferred distribution is preferred in the case of undefined benefits, *see Bailey v. Bailey*, 745 P.2d 830, 832-33 (Utah Ct. App. 1987).

2. I do not agree with the majority's assertion that Zoric contributed to the promotion merely because Johnson could not have "achieve[d] E-7 without having first achieved

(continued...)

promotion to a higher position does not necessarily occur in the course of employment. Therefore, an additional return on Zoric's investment in Johnson's retirement, based on his later promotion to E-7, was not part of her expected benefit at the time of the divorce.[3]

¶38   My approach is not equivalent to that advocated by the bright line approach, which calculates a spouse's share of a pension benefit using the employee's salary at the time of divorce, *see supra* ¶ 16, because I would give Zoric the benefit of increases to the retirement benefit due to normal raises in the E-5 salary—a benefit I believe she is entitled to in return for her having to wait for payment of her share of the retirement. Given that the E-5 salary at the time of Johnson's retirement may be easily determined,[4]

---

2. (...continued)
E-5," *supra* ¶ 17.  Although there are certainly circumstances where one spouse is entitled to compensation for contributions made to the other spouse's earning capacity, *cf.* Utah Code Ann. § 30-3-5(8)(vii) (Supp. 2011) (providing that "whether the recipient spouse directly contributed to any increase in the payor spouse's skill by paying for education received by the payor spouse or allowing the payor spouse to attend school during the marriage" is a factor the trial court should consider in awarding alimony), there is no evidence of any specific contribution made by Zoric to Johnson's earning capacity apart from the fact that she was married to him while he was employed at the E-5 rank.  It is to be expected that a person's earning capacity will generally increase throughout his or her life, with or without the assistance of a spouse, and I do not believe that a person is entitled to benefit from all future improvements in his or her spouse's financial situation merely by virtue of their having been married for some period of time.

3.  It is true that employees will frequently receive promotions in the course of their careers, but the benefits of such promotions are merely hoped for, not expected.

4.  I recognize that such a calculation may not be possible in circumstances where an employee's position does not have a clearly defined salary.  In such circumstances, it may be necessary to calculate the spouse's share based on the actual retirement benefit—somewhat analogous to equally dividing technically "separate" property due to its having been "inextricably commingled" with the marital estate, *see, e.g., Burt v.*

(continued...)

I would calculate Zoric's pension benefit as 20.8% of the benefit Johnson would have received if he had retired at the E-5 rank.[5]  I do not believe that this approach would unduly complicate the *Woodward* formula, and I think it would ultimately result in a more accurate and equitable method of dividing the marital portion of undefined retirement assets.

_____

James Z. Davis, Judge

---

4.  (...continued)
*Burt*, 799 P.2d 1166, 1169 (Utah Ct. App. 1990).  However, where a more accurate calculation is possible, such as in the case of military or government employees, I believe the more accurate calculation should be made.

5.  Consistent with this position, I would assert that the same would be true if Johnson had received a demotion to a lower salary level.  Despite such a demotion, Zoric would still be entitled to what she would have received if Johnson had remained at the E-5 rank.  Such a result is supported by *Woodward*'s explanation that a spouse who is awarded an equal share of deferred retirement proceeds is entitled to a share of the retirement even if the employee spouse elects to leave his employment before the retirement benefits vest.  *See Woodward v. Woodward*, 656 P.2d 431, 433 (Utah 1982).