OPINION
VOROS, Associate Presiding Judge:
{1 This appeal involves the allocation of the military retirement benefit of an employee spouse pursuant to a 1984 divorcee decree. Mark Lawrence Johnson, a retiree from the United States Air Force, seeks review of the amount of his military retirement the trial court awarded to his ex-wife, Elizabeth Ann Zoric. We affirm in part, reverse in part, and remand for further proceedings.
BACKGROUND
¶2 Johnson and Zorie were married from 1974 to 1984.[1] They had two children together. During the marriage, Johnson accrued approximately ten years of service in the United States Air Force. At the time of the divorce, Johnson was a Staff Sergeant at a pay grade of E-5. In the divorce decree, the trial court awarded Zoriec one-half of ten years of Johnson's military retirement. Because Johnson's retirement had yet to vest, the trial court did not determine a specific amount owed to Zoric.
T3 In 1998, Zoric made an attempt to claim her portion of Johnson's retirement; however, the retirement office denied her application on the ground that the court order she submitted lacked specificity. Thereafter, Zoric allegedly made statements to the parties' adult son to the effect that she was not intending to seek her portion of Johnson's retirement. According to Johnson, the son conveyed those statements to Johnson and, as a result, he "made substantial changes in his life financially."
T4 In 1999, Johnson retired and began receiving military retirement benefits At that time he was a Master Sergeant at a pay grade of E-7. His military pension was thus calculated based on a pay grade of E7. In September 2000, Johnson received a veteran's disability award for various ailments that arose after the divorce. Johnson's final retirement benefit was reduced by amounts Johnson received under that award.
T5 Zorie next attempted to secure her portion of Johnson's military retirement in October 2008, when she filed a Qualified Domestic Relations Order (QDRO).[2] In keeping with the 1984 divorcee decree, the trial court awarded Zoric a share of Johnson's actual monthly military retirement benefit. The court calculated her share based on Johnson's actual retirement benefit, which was based on Johnson's salary at the time of retirement, less the disability reduction. The trial court also calculated Zorie's share based on Johnson's gross monthly retirement benefit without first deducting federal, state, and local taxes. However, the trial court determined that the doctrine of laches barred Zoric from recovering her share of any retirement benefits paid before she filed the QDRO.
ISSUES AND STANDARDS OF REVIEW
16 Johnson first contends that the trial court erred by calculating Zorics share of the retirement benefit using his pay grade at the time of retirement instead of his pay grade at the time of divorce. "A trial court has considerable discretion considering property [division] in a divorce proceeding, thus *559 its actions enjoy a presumption of validity. We will disturb the trial court's division only if there is a misunderstanding or misapplication of the law such that a manifest injustice or inequity results, indicating an abuse of discretion." Oliekan v. Oliekan, 2006 UT App 405, ¶ 16, 147 P.3d 464 (applying this standard of review to distribution of a retirement benefit) (citation and internal quotation marks omitted).
T7 Johnson next contends that the trial court erred by calculating Zorie's share of the retirement benefit based on his gross retirement pay rather than first deducting federal and state taxes. This contention presents a question of law, which we review for correctness. See Maxwell v. Maxwell, 796 P.2d 403, 404 (Utah Ct.App.1990).
18 Johnson next contends that Zoric's claim is barred by the applicable statute of limitations. The application of a statute of limitations is a question of law, reviewed for correctness. See Nolan v. Hoopiiaina (In re Hoopiiaina Trust), 2006 UT 53, ¶ 19, 144 P.3d 1129.
19 Finally, Johnson contends that Zoric's claim is barred by the common law doctrines of estoppel, waiver, and laches. These issues present mixed questions of law and fact. See United Park City Mines Co. v. Stichting Mayflower Mountain Fonds, 2006 UT 35, ¶ 21, 140 P.3d 1200; Nunley v. Westates Casing Servs., Inc., 1999 UT 100, ¶ 31, 989 P.2d 1077; Anderson v. Doms, 1999 UT App 207, ¶ 8, 984 P.2d 392. We review the trial court's legal conclusions for correctness and its factual findings for clear error. See United Park City Mines Co., 2006 UT 35, ¶ 21, 140 P.3d 1200; Nunley, 1999 UT 100, ¶ 31, 989 P.2d 1077; Anderson, 1999 UT App 207, ¶ 8, 984 P.2d 392.
ANALYSIS
I. Retirement Calculation: Pay Grade
1 10 Johnson contends that the trial court erred in calculating Zorie's share of his retirement benefit based on Johnson's pay grade at the time of retirement rather than his pay grade at the time of the divorce.
An employee spouse's retirement benefits are subject to equitable distribution in a divorce proceeding, provided that the benefits "acerued in whole or in part during the marriage." Woodward v. Woodward, 656 P.2d 481, 483 (Utah 1982). Where the benefits accrued in part during the marriage, the nonemployee spouse's share is calculated using what is commonly known as the time rule formula. See In re Marriage of Hunt, 909 P.2d 525, 531 (Colo.1995). The time rule formula employs a "marital fraction" to calculate the nonemployee spouse's interest in the employee spouse's pension benefit:
The marital fraction consists of the numerator[,] which is the number of years (or months if more accurate) that the employee spouse has earned towards the pension during the marriage, over the denominator, which is the number of years (or months if more accurate) of total service towards the pension. The marital fraction is multiplied times the monthly benefit and divided in half (in order to divide the marital portion of the pension benefits).
Id.
1 12 Utah's version of the time rule formula was explained in Woodward v. Woodward, 656 P.2d 431 (Utah 1982). In Woodward, the husband accrued fifteen years towards his government pension during the parties' marriage, but the parties divorced before the husband's pension had fully vested. See id. at 431-32, The husband needed to work thirty years to qualify for a government contribution to his pension, which would be made at the time the husband retired, at least fifteen years after the divorcee. See id. at 432. The issue was whether the amount of the husband's pension that would be contributed by the government at his retirement was a marital asset and thus apportionable by the trial court at the time of the divorce. See id. at 431-32. Much like the argument advanced by Johnson in the instant case, the husband in Woodward argued that the wife had no right to the amount of his pension that would be contributed by the government because that amount was contingent upon his continued government employment after the divorce. See id. at 432.
*560 13 The supreme court held that the government contribution was a marital asset subject to equitable division and that "the wife [was] entitled to share in that portion of the benefits to which the rights accrued during the marriage." Id. at 433. Furthermore, because the husband had to "work for a total of thirty years, his pension benefits, including any contribution by the government, [were] as dependent on the first fifteen years as the last fifteen." Id. The court then described what has come to be known as the Woodward formula. Under that formula, "the marital property subject to distribution is a portion of the retirement benefits represented by the number of years of the marriage divided by the number of years of the husband's employment." Id. at 483-34. The non-employee spouse is then awarded a share of that amount. Id.
114 Here, the trial court applied the Woodward formula without elaboration. It divided the number of years of the marriage (ten) by the number of years of the husband's employment (twenty-four) and multiplied the quotient by the wife's share (one-half), yielding a percentage of 20.8%. Thus far the parties agree.[3] They part company on the question of what benefit amount this percentage should be applied to. The trial court applied it to Johnson's actual monthly retirement benefit, which is based on his pay grade at retirement, E-7.
1 15 Johnson maintains that Zoric's share should be calculated by using his pay grade at the time of the divorce, E-5. Johnson argues that using his pay grade at the time of retirement allows Zorie to unjustly reap the benefits of rank advancements that he achieved-without her help-after the parties' divorce. Zoric responds that Johnson seeks the benefits of his post-divorce years of service without the burdens. While Johnson's years of service after the divorce allowed him to increase his pay grade and thus his retirement benefit, they also diluted Zoric's share from 50% to 20.8%. Thus, she reasons, if her portion of his retirement benefit is calculated based on his pay grade at the time of the divoree, it should likewise be calculated based on her spouse's share at the time of the divorcee (50%). Similarly, Zorie argues that if Johnson alone enjoys the benefit of post-divorce pay grade increases, he alone should bear the burden of the deduction based on his post-divorce disability.
116 The approach advocated by Johnson is sometimes referred to as the "bright line" rule.[4] Cases applying this rule "equate post-dissolution pension benefit enhancements with post-dissolution earnings." In re Marriage of Hunt, 909 P.2d 525, 533 (Colo.1995). A number of jurisdictions have applied this rule and held that the employee's salary at the time of the divorcee should be used in calculating the spouse's share of a pension benefit Seq eg., Armstrong v. Armstrong, 34 S.W.3d 83, 87 n. 4 (Ky.Ct.App.2000) (collecting cases).
117 The approach advocated by Zoric is sometimes referred to as the "marital foundation" theory. This approach treats post-divorce benefit enhancements as marital property. See Hunt, 909 P2d at 532. Courts employing this method maintain that post-divorce rank enhancements are often attainable only due to the "foundation work and efforts undertaken during the marriage." See id. at 588-84 (gathering cases); Bullock *561 v. Bullock, 354 N.W.2d 904, 910 (N.D.1984) (noting that the husband's post-divorce "military career and earning ability were developed and enhanced throughout the course of the parties' seventeen year marriage"). In other words, this approach recognizes that an employee cannot achieve a rank of E-7 without having first achieved a rank of E-5, and so forth. It therefore uses the pay grade at the time of retirement to calculate the receiving spouse's share of the retirement benefit. See Hunt, 909 P.2d at 532-34.
118 Like the "marital foundation" approach, the Woodward formula applies the marital fraction to the employee spouse's actual "retirement benefits." Woodward, 656 P.2d at 433-34. Woodward never suggests that the marital fraction should instead be applied to a hypothetical figure based on what the employee spouse's retirement benefit would have been had he received no salary increases after the date of the divorcee. To do so would add a significant step to the Woodward formula.
"[ 19 Moreover, as noted above, the Woodward court stated that because the husband "must work for a total of thirty years, his pension benefits, including any contribution by the government, are as dependent on the first fifteen years as the last fifteen." Id. This statement is consistent with the underlying rationale of the "marital foundation" theory, but inconsistent with the underlying rationale of the "bright line" theory advocated by Johnson.
120 The trial court here merely applied the Woodward formula as written, without taking the additional step that Johnson urges, but that Woodward itself never mentions. The trial court thus acted well within its discretion.
IIL Retirement Calculation: Net Benefit
121 Johnson next challenges the trial court's ruling that Zorie's share of the retirement benefit should be calculated "prior to the deduction of any taxes." Johnson contends that "federal and state taxes should be removed from [his] disposable retired pay before any allocation is determined." We agree.
122 This court addressed this issue in Maxwell v. Maxwell, 796 P.2d 408 (Utah Ct.App.1990). In Maxwell, we noted that the United States Former Spouses Protection Act, 10 U.S.C.A. § 1408 (1983) (USFS-PA), provides that "a court may treat disposable retired or retainer pay payable to a member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." Maxwell, 796 P.2d at 405. (quoting 10 U.S.C.A. § 1408(c)(1)) (internal quotation marks omitted). As we further noted, the United States Supreme Court has interpreted this provision to mean that the USFSPA "only grant[s] state courts discretion to divide 'disposable retired or retainer pay'" Id. (quoting Mansell v. Mansell, 490 U.S. 581, 586, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989)). The USFSPA defines "disposable retired or retainer pay" as "gross retirement pay less authorized deductions, including amounts properly deducted for federal, state, or local taxes." Id. (citing 10 U.S.C.A. § 1408(a)(4)(C)). We therefore held in Maxwell that the Supreme Court had made "clear ... that USFSPA does not authorize state courts to treat gross retirement pay as marital property divisible upon divorce." Id. at 406.
123 Accordingly, we reverse the ruling of the trial court on this issue and remand for the court to recalculate Zorie's portion of the retirement benefit using Johnson's "gross retirement pay less authorized deductions, including amounts properly deducted for federal, state, or local taxes." Id. (citing 10 U.S.C.A. § 1408(a)(4)(C)).[5]
III. Statute of Limitations
124 Johnson next contends that Zorie's claim to a share of his pension benefits is barred by the statute of limitations. As stated above, the trial court awarded Zorie no portion of the retirement benefits paid before *562 she filed the QDRO.[6] However, it did award her a share of benefits paid after the date she filed the QDRO. Johnson challenges this award.
125 Johnson contends that Zories claim is wholly barred by the applicable statute of limitations. He relies on Utah Code Section 78B-2-811, which states, "An action may be brought within eight years upon a judgment or decree of any court of the United States, or of any state or territory within the United States." Utah Code Ann. § 78B-2-311 (2008). He argues that although the decree was entered in 1984, Zorie "failed to do anything to secure any kind of payment on that decree until 2008, nearly twenty-four years after the decree had been entered" and "more than nine years after [Johnson's] retirement."
126 Johnson's argument is foreclosed by Seeley v. Park, 532 P.2d 684 (Utah 1975). The question before the court in Seeley was "whether or not the statute of limitation applies to past due unpaid installments under a divorce decree." Id. at 684, The court held that "[iInstallments under a decree of divorce for alimony or support of minor children become final judgments as soon as they are due and cannot thereafter be modified." Id. Accordingly, "the statute begins to run against the judgment from the time fixed for the payment of each installment for the part then payable." Id. at 685 (quoting Simmons v. Simmons, 67 S.D. 145, 290 N.W. 319, 320 (1940)).
T 27 Although Seeley did not expressly address pension benefits, we see no reason- and Johnson suggests none-why it should not apply to them. Moreover, exempting retirement benefits from Seeley's rule could result in an unacceptable anomaly in cases such as this. If the limitations period had begun to run upon entry of the decree, it would have expired on Zoric's retirement benefits claim before Johnson missed his first payment. Such an outcome would be troublesome at the very least. See Berry v. Beech Aircraft Corp., 717 P.2d 670, 682-86 (Utah 1985) (invalidating a statute under Article I, Section 11 of the Utah Constitution because it was a statute of repose that barred certain claims before the cause of action accrued).
1 28 Accordingly, we conclude that the trial court did not err in rejecting Johnson's argument that the limitations period should run from the date of the decree.
IV. Common Law Defenses
129 Finally, Johnson argues that the trial court erred in rejecting his common law defenses of estoppel, waiver, and laches. We decline to address the merits of these arguments because they are inadequately briefed.
T 30 An adequately briefed argument "contains the contentions and reasons of the appellant with respect to the issues presented, including the grounds for reviewing any issue not preserved in the trial court, with citations to the authorities, statutes, and parts of the record relied on." Utah R.App. P. 24(a)(9). An issue is inadequately briefed "when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." State v. Thomas, 961 P.2d 299, 304 (Utah 1998). The reviewing court "'is not simply a depository in which the appealing party may dump the burden of argument and research"" State v. Bishop, 753 P.2d 439, 450 (Utah 1988) (quoting Williamson v. Opsahl, 92 Ill.App.3d 1087, 48 Ill.Dec. 510, 416 N.E.2d 783, 784 (1981)). "And we may refuse, sua sponte, to consider inadequately briefed issues." State v. Lee, 2006 UT 5, ¶ 22, 128 P.3d 1179 (citing Utah R.App. P. 24(j); Bernat v. Allphin, 2005 UT 1, ¶ 38, 106 P.3d 707).
131 The section of Johnson's brief addressing estoppel, waiver, and laches does not satisfy the requirements of rule 24 of the Utah Rules of Appellate Procedure. Although Utah courts have thoroughly addressed these doctrines, the brief cites no Utah cases. Nor does it cite to the "parts of the record relied on" as required by rule 24. See Utah R.App. P. 24(a)(9). "We recognize that lawyers operate within practical constraints.... Nevertheless, our system is designed so that the 'appellant must do the *563 heavy lifting,'" Niemela v. Imperial Mfg., Inc., 2011 UT App 333, ¶ 24, 263 P.3d 1191 (quoting State v. Robison, 2006 UT 65, ¶ 21, 147 P.3d 448). Accordingly, we decline to reach these issues.
CONCLUSION
132 The trial court acted well within its discretion in applying the Woodward formula as written rather than adding a step to that formula not included by our supreme court. In addition, the court did not err in rejecting Johnson's statute of limitations argument. However, the trial court acted in violation of controlling law by calculating Zorie's share of Johnson's military retirement benefit before adjusting Johnson's benefit for state and federal taxes. Finally, we decline to reach the merits of Johnson's inadequately briefed es-toppel, waiver, and laches challenges.[7]
1 33 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
€34 I CONCUR: MICHELE M. CHRISTIANSEN, Judge.

. Contrary to the implication of Johnson's brief, the divorce court expressly found that "neither party has superior possession by way of morality over the other."

. The Retirement Equity Act of 1984, Pub.L. No. 98-397, 98 Stat. 1426 (1986) (codified as amended at 29 U.S.C. § 1056(d)(3)(B) (2010)), created what is known as a Qualified Domestic Relations Order, or QDRO. See Bailey v. Bailey, 745 P.2d 830, 832 (Utah Ct.App.1987). A QDRO instructs "the trustee of a retirement plan and specifies how distributions should be made, to whom, and when. Although a QDRO cannot order the payment of a benefit which is not allowed under a particular plan, it can order partial payment to an alternate payee (an ex-spouse, for example)." Id.

. As explained below, based on a number of theories, Johnson does not concede that Zoric is entitled to any of his retirement benefit. But assuming she is entitled, Johnson agrees that she is entitled to 20.8%.

. The bright line rule may not be as simple in application as its name implies:
By logical extension, the "bright line" rule would require courts to attempt to parse out the "marital" portion of the post-dissolution enhancement from the "separate" portion, ie., that portion attributable solely to the efforts of the employee spouse and not related to the marriage whatsoever. Implementation of the "time rule" formula, in the first instance, accomplishes that goal and removes courts from the complicated, time-consuming, inefficient, and hopelessly flawed task of evaluating the enhancement and denominating the enhancement as either marital, separate, passive, or some combination thereof. See Turner § 6.10 at 65 (2d ed. 1995 Supp.) (the time rule formula has the benefit of simplicity because "it avoids the need to draw messy distinctions between different types of postdivorce increases").
Hunt, 909 P.2d at 535.

. Zoric does not defend the trial court's ruling on this point, but proposes "options for addressing [Johnson's] concerns with regard to payment of taxes." How best to achieve the result mandated by Maxwell and Mansell we leave to the trial court on remand.

. Zoric does not challenge this ruling on appeal.

. Both parties seek their attorney fees on appeal. We award no fees.