*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2019 UT 14**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

BECKY SUMSION,
*Appellant,*

*v.*

J. LYNE ROBERTS AND SONS, INC. and H&H STEEL FABRICATORS, INC.,
*Appellees.*

No. 20180347
Filed April 26, 2019

On Direct Appeal

Fourth District, Utah County
The Honorable Lynn W. Davis
No. 160400033

Attorneys:

Allen K. Young, Tyler S. Young, Provo, for appellant

Vincent J. Velardo, Thomas J. Rollins, Salt Lake City, for appellee
J. Lyne Roberts and Sons, Inc.

S. Spencer Brown, Jack D. Smart, Salt Lake City, for appellee
H&H Steel Fabricators, Inc.

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in
which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, JUSTICE PEARCE,
and JUSTICE PETERSEN joined.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1 In this case we are asked to decide whether a contractor who
created an artificial condition on the land of another owes a duty of
reasonable care to the employees of the land owner. Becky Sumsion,
the plaintiff-appellant in this case, contends that we answered this
question in the affirmative in *Tallman v. City of Hurricane*, 1999 UT 55,
985 P.2d 892. She argues that *Tallman* announced a categorical rule
establishing a duty of all contractors who create artificial conditions

on the land of another, which extends to all foreseeable users of such conditions. The defendants-appellees see the matter differently. They insist that the existence of a duty in this circumstance depends on an analysis of the factors set forth in *AMS Salt Industries, Inc. v. Magnesium Corp. of America*, 942 P.2d 315 (Utah 1997).

¶2   The district court agreed with the defendants. It granted their motion to dismiss the plaintiff's claims on the ground that she had failed to carry the burden of presenting grounds for the establishment of a duty under *AMS Salt* and its progeny. We reverse and remand. We hold that the Restatement (Second) of Torts framework endorsed in *Tallman*, and not the factors set forth in *AMS Salt*, controls in a case like this one. And we thus reverse the district court's decision, which was premised on a contrary conclusion. In so doing, however, we do not conclusively resolve the extent of a contractor's duty in a case like this one. We stop short of resolving that question because the parties failed to brief a few dimensions of the relevant duty inquiry under the Restatement (Second) of Torts framework adopted in *Tallman*. Instead we offer some points of clarification under the *Tallman* framework in a manner that we hope will be useful to the parties and the district court on remand.

I

¶3   In 2012, the City of Springville decided to construct a "splash pad" recreation area in a public park. The City retained MGB+A as the lead architect. MGB+A hired JRCA Architects, Inc. ("JRCA") to help design a pump house that would host the pumps supplying water to the splash pad. The city contracted with J. Lyne Roberts and Sons, Inc. ("JLR") to construct the splash pad and pump house. JLR was instructed to install a ladder in the pump house to access the pump pit, which housed some of the controls. JLR subcontracted with H&H Steel Fabricators, Inc. ("H&H") to manufacture the ladder. The entire splash pad project was completed in April 2013.

¶4   Becky Sumsion began working for the City in May 2014. Her duties required her to make regular adjustments to the pumps located in the pump pit. On June 2, 2015, Sumsion fell off the pump house ladder as she was climbing down into the pump pit and broke her ankle. That injury gave rise to this suit.

¶5   Sumsion first sued JLR alleging negligence related to the design and manufacture of the ladder in question. Four months later, she amended her complaint to include MGB+A, JRCA, and H&H. The claim against each party was substantially the same—failure to properly design and construct the access ladder leading to the pump

pit resulted in her injury. MGB+A and JRCA settled claims against them, leaving JLR and H&H as the only named defendants.

¶6 In September 2017, H&H and JLR filed motions for summary judgment. They both contended that summary judgment was appropriate because they owed Sumsion no duty of care. They further argued that Sumsion could not prove that her fall was directly and proximately caused by a defect in the ladder.

¶7 The district court granted JLR and H&H's motions for summary judgment on the ground that they did not owe Sumsion a legal duty. In framing its decision, the court first cited what it believed to be the relevant duty standard—a standard requiring consideration of four factors: "(1) the extent that the [defendant] could foresee that its actions would cause harm; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against it; and (4) the consequences of placing the burden on the defendant." *Niemela v. Imperial Mfg., Inc.*, 2011 UT App 333, ¶ 19, 263 P.3d 1191 (quoting *Slisze v. Stanley-Bostitch*, 1999 UT 20, ¶ 12, 979 P.2d 317). Sumsion offered no substantial analysis on the last three of these factors. She instead argued that as an employee of the City she was a foreseeable user of the ladder. And she insisted that JLR and H&H thus owed her a duty to provide a reasonably safe ladder for her authorized use.

¶8 Sumsion cited *Tallman v. City of Hurricane*, 1999 UT 55, 985 P.2d 892, in support of her position. In *Tallman* we held that "Utah follows the foreseeability rule set forth in the Restatement (Second) of Torts and followed by a majority of states" in assessing whether a manufacturer of an artificial condition owes another a duty of care. *Id.* ¶ 8. The Restatement rule first states:

> One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor, under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others.

RESTATEMENT (SECOND) OF TORTS § 385 (1965). Subsequent sections of the Restatement provide further elaboration. They identify standards for determining the duty for one who makes a chattel for the use of others. *See id.* §§ 394–98, 403–04.

¶9   The district court acknowledged the *Tallman* holding and its adoption of the Restatement. But it concluded that *Tallman* speaks only to the first of the four factors set forth in *Niemela*—foreseeability of the harm. And it read *Tallman* to say that harm is foreseeable only in instances where a contractor knew, or had reason to know, that the condition it created was, or was likely to be, dangerous for use. *See id.* § 394. The court held that Sumsion had provided insufficient analysis to reach that conclusion.

¶10 The court further held that Sumsion had the burden of addressing the other *Niemela* factors—the likelihood of the injury, the magnitude of the burden of guarding against it, and the consequences of placing the burden on the defendant. *See Niemela*, 2011 UT App 333, ¶ 19. And because she failed to do so, the court determined that summary judgment in JLR and H&H's favor was appropriate. Sumsion then filed this appeal.

II

¶11 Sumsion contends that *Tallman* alone resolves the issue before us. We agree that *Tallman* controls in this case and thus hold that the district court applied the wrong legal standard in dismissing Sumsion's claims. In so holding we do not conclusively resolve the question whether the defendants owe plaintiff a duty here, however. We stop short of resolving that question due to inadequacies in the parties' briefing—inadequacies that, in turn, stem from imprecisions in our decision in *Tallman*. We highlight some of the unanswered questions and imprecisions in the law in our discussion below, in the hopes of providing guidance for the parties and the district court on remand.

A

¶12 Duty is one of four essential elements a plaintiff must prove to establish negligence.[1] "As a general rule, we all have a duty to exercise care when engaging in affirmative conduct that creates a

---

[1] *Hunsaker v. State*, 870 P.2d 893, 897 (Utah 1993) ("To prevail on a negligence claim, a plaintiff must establish four essential elements: (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) that the breach of duty was the proximate cause of the plaintiff's injury, and (4) that the plaintiff in fact suffered injuries or damages.").

risk of physical harm to others." *B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 21, 275 P.3d 228. Our courts, however, have carved out some exceptions to this general rule. Historically, one such exception functioned to cut off a contractor's liability to third parties after the contractee accepted the work. *Tallman v. City of Hurricane*, 1999 UT 55, ¶ 7, 985 P.2d 892. This "acceptance" doctrine found its roots in English courts, which premised a contractor's liability on privity of contract. *See Winterbottom v. Wright* (1842) 152 Eng. Rep. 402. The doctrine began to fade out of American jurisprudence in the mid-twentieth century in favor of a rule based on the foreseeability of the harm.[2] We noted the shift towards the foreseeability rule in *Leininger v. Stearns-Roger Manufacturing Co.*, 404 P.2d 33, 36 (Utah 1965). But it wasn't until our *Tallman* decision that we abrogated the old "acceptance" doctrine.

¶13 In *Tallman* we "announce[d] unambiguously that Utah follows the foreseeability rule set forth in the Restatement (Second) of Torts and followed by a majority of states." 1999 UT 55, ¶ 8. In so doing we eliminated the "archaic principle of privity" inherent in the acceptance doctrine. *Id.* But we did not clearly establish the terms and conditions of a contractor's duty to third persons—to whom the duty is owed, when it is imposed, and the relevant standard of care.

¶14 The *Tallman* opinion stated that "[t]he creator of an artificial condition on land may be liable to others . . . for physical harm caused by its dangerous nature." *Id.* ¶ 9. In that case we also noted that "[t]he subsequent acceptance by the possessor of the completed condition does not abrogate this duty." *Id.* And we cited section 385 of the Restatement to define the breadth of a contractor's potential liability:

> One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land for physical harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor, under the same rules as those determining the liability of one who as

---

[2] *See, e.g.*, *Hanna v. Fletcher*, 231 F.2d 469 (D.C. Cir. 1956), *cert. denied*, 351 U.S. 989 (1956); *Montijo v. Swift*, 33 Cal. Rptr. 133 (Cal. Ct. App. 1963); *MacPherson v. Buick Motor Co.*, 111 N.E. 1050 (N.Y. 1916); *Evans v. Otis Elevator Co.*, 168 A.2d 573 (Pa. 1961).

manufacturer or independent contractor makes a
chattel for the use of others.

*Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 385 (1965)).

¶15 In *Tallman* we said that the rules for "determining the
liability of one who as manufacturer or independent contractor
makes a chattel for the use of others" are in turn defined in sections
394–398 and 403–404. *Id.* ¶ 9. Yet we never delved into any of the
details of the cited Restatement sections. Instead we analogized
"[t]he digging of an unsafe and inherently dangerous trench"—the
alleged cause of the Tallman's injury—"to the manufacture of an
unfinished, inherently dangerous product." *Id.* We then quoted the
Restatement section underscoring "the nature of the duty owed by
the supplier of an unfinished, inherently dangerous product." *Id.*
¶ 10.

> One who supplies directly or through a third person a
> chattel for another's use, knowing or having reason to
> know that the chattel is unlikely to be made
> reasonably safe before being put to a use which the
> supplier should expect it to be put, is subject to
> liability for physical harm caused by such use to those
> whom the supplier should expect to use the chattel or
> to be endangered by its probable use.

*Id.* (emphasis omitted) (quoting RESTATEMENT (SECOND) OF TORTS
§ 389). Beyond reciting this language, we did little to explain which
of it—if any—speaks to the conditions for the imposition of a duty
on a contractor. And we at least arguably offered conflicting signals
on the basis for the imposition of a duty.

¶16 At one point we suggested that a duty of care exists "where
the supplier of a chattel knows or has reason to know that the chattel
'is unlikely to be made reasonably safe before being put to a use
which the supplier should expect it to be put.'" *Id.* ¶ 12 (quoting
RESTATEMENT (SECOND) OF TORTS § 389). And we highlighted a
number of material facts that needed to be resolved before we could
conclude that a duty existed, including the contractor's knowledge
of the dangerous condition, the foreseeability of the harm, and the
likelihood of injury. *Id.* ¶ 24. Elsewhere, however, we made
categorical statements seemingly in tension with the above—that
"the creator of an artificial condition on land has a duty to perform
its work with reasonable care to avoid harm to people who might
foreseeably come in contact with the condition," *id.* ¶ 20, and that a
contractor has a "duty to take reasonable precautions to protect

persons exposed" to a condition if it "created an inherently dangerous condition," *id.* ¶ 19.

¶17 This tension within the *Tallman* opinion leaves some unanswered questions that have yet to be resolved in this case. *See infra* ¶ 28. But *Tallman* is clear in concluding that the Restatement's conception of duty controls in cases like this one. We thus reject the argument advanced by JLR and H&H and accepted by the district court—that our pre-*Tallman* cases (specifically *AMS Salt Industries v. Magnesium Corp. of America* and *Slisze v. Stanley-Bostitch*) control the outcome of this case. Those cases, which detail four factors courts should consider when assessing whether a contractor owes a third person a duty of care, are distinguishable.

¶18 *AMS Salt Industries, Inc. v. Magnesium Corp. of America*, 942 P.2d 315 (Utah 1997) concerned a dispute between two adjacent facilities (AMS and Mag Corp) along the shores of the Great Salt Lake. Both facilities pumped water out of the lake and into ponds where it would then evaporate leaving behind salt that could be extracted. And both facilities employed a system of dikes to keep water from escaping back into the lake. Mag Corp's dikes were breached during a severe storm. That breach resulted in the destruction of some of AMS's ponds and served as the basis for AMS's suit against Mag Corp. AMS argued that Mag Corp owed it a duty to construct and maintain its own dikes. We rejected that argument, going so far as to say that it would be "absurd" in those circumstances to hold that "Mag Corp owed some legally actionable duty to AMS." *Id.* at 324.

¶19 JLR and H&H believe that our holding in *AMS Salt* naturally extends to this case. But the facts at issue in *AMS Salt* bear little resemblance to the facts at issue here. In contrast to the present case—where Sumsion has sued JLR and H&H for the negligent construction of an artificial condition on Springville City's land—the basis for AMS's suit was "that Mag Corp was negligent in the design, construction, and maintenance of Mag Corp's perimeter dike" on Mag Corp's own land. *Id.* at 318. So we see little reason for extending what we said about duty in *AMS Salt* to this case.

¶20 *Slisze v. Stanley-Bostitch*, 979 P.2d 317 (Utah 1999) is likewise distinguishable. There we dealt with a construction worker who sustained a head injury following an accident involving the use of a nail gun. The worker sought to recover under a theory that the manufacturer marketed a non-defective product when a safer model was available. That theory of recovery is quite different from the one presented here. Sumsion is suing JLR and H&H for their negligence

in designing and manufacturing the actual chattel that was installed in the pump house. She is not seeking to prevail on a theory of negligent marketing, but rather on a theory that the chattel itself was unsafe. We thus reject the call to apply the duty standard discussed in *Slisze* to the present case.

¶21 The four-factor test detailed in both *AMS Salt* and *Slisze* may be relevant in future cases, but it does not define the scope of a contractor's duty in a case such as this one. Although some aspects of *Tallman* may be confusing, one thing is clear: we use the Restatement (Second) of Torts to define the scope of a contractor's duty to third parties in a case in which the contractor built an artificial condition on land.

¶22 Beyond this the *Tallman* opinion is less than a model of clarity. *See supra* ¶¶ 14–17. The Restatement, however, establishes a clear framework for assessing the scope of a contractor's duty. It does so by first providing:

> One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others upon or outside of the land . . . under the same rules as those determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others.

RESTATEMENT (SECOND) OF TORTS § 385. "The rules determining the liability as one who as manufacturer or independent contractor makes a chattel for the use of others" are subsequently defined "in §§ 394–398, and §§ 403–404." *Id.* § 385 cmt. a. Each of those sections establishes and defines the scope of a manufacturer's duty, dependent on the nature of the manufactured chattel. For instance, section 395 defines the duty imposed on a manufacturer who manufactures a chattel "which, unless carefully made, he should recognize as involving an unreasonable risk of causing physical harm." *Id.* § 395. Section 394, in contrast, provides that those who manufacture a chattel that is known to be dangerous owe the same duty as a supplier of a chattel that is known to be dangerous. *Id.* § 394. And the rules defining the scope of such a supplier's duty are established in sections 388–390. *Id.* § 394 cmt. a.

¶23 Sections 397 and 398 speak to two distinct duties—one where a chattel is compounded under a secret formula and another where a chattel is made under a dangerous plan or design. *Id.* §§ 397–98. And sections 403 and 404 do not themselves establish separate duty standards. They instead direct us to sections

previously referenced. Section 403 essentially mirrors section 394. It applies where an independent contractor creates a chattel known to be dangerous and applies the same liability rules that apply to suppliers of such chattel. *Id.* § 403; *see also id.* §§ 388–90. And section 404 applies where an independent contractor negligently "makes, rebuilds, or repairs a chattel for another." *Id.* § 404. Such a contractor is "subject to the same liability as that imposed" "under the rules stated in §§ 395-398." *Id.* § 404 & cmt. a. Because each of these cited Restatement sections establishes a duty and fully explains the scope of that duty, the task before us in this case is to determine which Restatement section applies and determine whether the duty identified therein extends to Sumsion.

¶24 The district court failed to do this. Its resolution was based on an application of the *AMS Salt* factors rather than the duty analysis *Tallman* demands. The court opened its opinion by citing the *AMS Salt* factors and explaining that Sumsion failed to adequately brief each of them. And it concluded in like manner—noting that Sumsion failed to "offer any analysis whatsoever respecting the other applicable factors courts should consider when determining whether a duty of care exists." The court considered some of the Restatement's language. But it did so merely in an attempt to apply the "foreseeability of harm" factor under *AMS Salt*. And as previously stated, we do not see the *AMS Salt* framework as controlling the duty analysis in a case like this one. That alone gives us cause to reverse.

¶25 The court further erred when it determined that Sumsion was required to prove things that have nothing to do with whether JLR and H&H owe her a duty of care. For instance, the court stated that Sumsion was required to "show how [JLR and H&H] failed to exercise reasonable care in the manufacture of the ladder." And it held that Sumsion was required to demonstrate "how the ladder posed an unreasonable risk of harm to foreseeable users." Both of these considerations go to "the specifics of the alleged tortious conduct" and thus are outside the bounds of a duty analysis. *See B.R. ex rel. Jeffs*, 2012 UT 11, ¶ 25 (quoting *Normandeau v. Hanson Equip., Inc.*, 2009 UT 44, ¶ 20, 215 P.3d 152). We reverse the decision of the district court for these reasons.

B

¶26 In a typical case we might explain the standard that should be applied on remand. But this is not a typical case. We lack the kind of briefing that would help us confidently resolve the question before us. And in the absence of such briefing, we choose not to

provide a definitive answer to that question. *See Zimmerman v. Univ. of Utah*, 2018 UT 1, ¶ 28, 417 P.3d 78 (reaching the same conclusion in the context of a certified question from a federal district court).

¶27 We are generally limited to considering issues raised by the parties. *Allen v. Friel*, 2008 UT 56, ¶ 7, 194 P.3d 903. But merely raising an issue is not enough. The parties must also adequately brief it. UTAH R. APP. P. 24. And when they fail to do so, we may have the discretion to defer deciding the issue until a later time. We have noted the existence of such discretion in the context of a case certified to us from a federal court. *See Zimmerman*, 2018 UT 1, ¶ 28. But we also retain some discretion here, where the option of a remand is a disposition available to us.

¶28 Here we are tasked with resolving a significant issue concerning the scope of a contractor's duty to third parties. Sumsion is of the view that *Tallman* resolved this issue. But it did not. Although *Tallman* provided some direction, it did not conclusively resolve the question presented in this case. Instead it sent some mixed signals, and failed to clarify the analysis called for by the Restatement. This problem is compounded by the imprecisions in the plaintiff's theory of its case. Sumsion has not clearly identified which Restatement section she relies on in support of her claims. And in these circumstances we conclude that a remand would better serve the parties and better help the courts in our resolution of the question of whether and to what extent a duty is owing in the circumstances of this case.

¶29 JLR and H&H largely ignore the problems highlighted above. They instead argue that our pre-*Tallman* cases (*AMS Salt* and its progeny) control the duty analysis in a case like this one. But that is incorrect.

¶30 In short, the parties largely argue past each other in the briefing before us. They fail to confront the questions highlighted above—as to which Restatement section the plaintiff is relying on, which elements of that section go to the existence of a duty, and whether the elements of a duty can be established in this case. Without the benefit of adversarial briefing on these issues, we are reluctant to announce a categorical duty standard as it applies to this case. Instead we exercise our discretion and remand without fully resolving the issue before us.

¶31 On remand we encourage the parties to clarify their positions on the language of section 385 and the sections it incorporates by reference—sections 394–398 and 403–404.

RESTATEMENT (SECOND) OF TORTS § 385 cmt. a. This is the language that should inform the decision of whether the defendants owe a duty in a case like this one—where a contractor creates an artificial condition on the land of another and an employee of the land owner is injured while using that condition.

¶32 By way of example, if the parties determined that section 395 applied here, the language of that section would fully define the scope of JLR and H&H's duty. Whether that duty extends to Sumsion would appear to depend on whether she falls within the class of individuals identified therein—those "lawful[ly]" using the chattel "in a manner and for a purpose for which it is supplied." *Id.* § 395. If she does, JLR and H&H would owe her a duty "to exercise reasonable care in the manufacture" of the chattel at issue. *Id.*

### III

¶33 We reverse the decision of the district court for the reasons discussed above. But we stop short of deciding whether JLR and H&H owe Sumsion a legal duty. The answer to that question should be decided using the standards articulated in the Restatement (Second) of Torts—specifically in section 385 and the sections it incorporates by reference.

―――――――――